**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE, FL DIVISION**

Case No: 1-19-cv- 221- AW/GRJ

DIMITRI PATTERSON,

      Plaintiff,

    vs.

THE MIAMI HERALD MEDIA COMPANY, THE
MEREDITH CORPORATION,
BALLER ALERT, INC., ROBIN LYON, BALLER
ALERT LLC, SUNBEAM TELEVISION
CORPORATION, TWENTY-FIRST CENTURY
FOX, INC., THE FOX CORPORATION, VERIZON
MEDIA LLC, VERIZON COMMUNICATIONS,
INC., TRIBUNE PUBLISHING COMPANY,
NEWS CORPORATION, COMCAST CORP., NBC
UNIVERSAL MEDIA LLC, FOOTBALLTALK
LLC, THE GANNETT COMPANY, WARNER
MEDIA LLC, BH MEDIA GROUP, INC., VOX
MEDIA, INC., THE DAILY CALLER, INC., COX
MEDIA GROUP, IBT MEDIA, INC., NEWSWEEK
MEDIA GROUP, INC., MICROSOFT
CORPORATION, ESPN, INC., NEW MEDIA
INVESTMENT GROUP, INC., GATEHOUSE
MEDIA MANAGEMENT SERVICES, INC.,
GATEHOUSE MEDIA FLORIDA HOLDINGS,
INC., CBS CORPORATION, JASMINE BRAND,
MAHIR FADLE, ROBERT LITTAL

      Defendants,

**DEMAND FOR JURY TRIAL**

**VERIFIED COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**

**GENERAL DEFAMATION**
**DEFAMATION PER SE**
**DEFAMATION BY IMPLICATION**
**INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**
**INVASION OF PRIVACY – FALSE**
**LIGHT**
**PUNITIVE DAMAGES**
**INJUNCTIVE RELIEF**
**GENERAL DAMAGES**
**NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS**
**SINGLE PUBLICATION RULE**

## INTRODUCTION

1.    This action is brought by the Plaintiff, Dimitri Patterson, against a multitude of media

outlets for the publishing of defamatory statements concerning unlawful arrests, purported


FILED USDC FLND GV
OCT 25 '19 AM9:40

criminal cases and warrants in Miami, Florida and Orlando, Florida. This action is predicated

both on what The Articles communicate as a whole, including the headlines, captions, and

the numerous defamatory statements concerning the Plaintiff contained within The Articles.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because the

amount in controversy exceeds $75,000.00, exclusive of interest and costs, and both the

Plaintiff and the Defendants are citizens of different states.

3.     Venue is proper pursuant to 28 U.S.C 1391, as the Defendants are subject to this Court's

personal jurisdiction, because all of the Defendants actions are directed to the Forum State of

Florida.

## PARTIES

4.     The Plaintiff, Dimitri Patterson, was and continues to be *sui juris* over the age of 18 and

a citizen of the State of Florida.

5.     At all times material hereto, the Defendant, The Miami Herald Media Company, a

corporation organized and existing under the laws of the state of Delaware, who is registered

with the Delaware Secretary of State with its principle place of business in California, is the

owner of the Miami Herald.

6.     At all times material hereto, the Defendant, The Meredith Corporation, a corporation

organized and existing under the laws of the state of Iowa who is registered with The Iowa

Secretary of State with its principle place of business in Des Moines, Iowa, is the owner of

Sports Illustrated, the Defendant is the "information content provider" pursuant to 47 U.S.C.

§ 230 (f)(3) and is liable for their subsidiary actions pursuant to *Florida Statute 836.03*.

2

7.  At all times, material hereto, the Defendant, Baller Alert, Inc., an active corporation organized and existing under the laws of the State of Florida who is registered with the Florida Department of State with its principle place of business in Miami, FL.

8.  At all times, material hereto, the Defendant, Baller Alert, LLC, a dissolved corporation organized and existing under the laws of the State of Florida who is registered with the Florida Department of State with its principle place of business in Miami, FL.

9.  At all times, material hereto, the Defendant, Robin Lyon who is a citizen of Florida is the owner of Baller Alert Inc. and Baller Alert, LLC and controls, maintains and operates the social media handle @balleralert on the global social media platform Instagram.

10.  At all times, material hereto, the Defendant, Sunbeam Television Corporation, the owner of WSVN Channel 7, a corporation organized and existing under the laws of the State of Florida, who is registered with the Florida Secretary of State, with its principle place of business in Miami, FL. Sunbeam Television Corporation is the content provider pursuant to 47 U.S.C. § 230 (f)(3).

11.  At all times, material hereto, the Defendant, BH Media Group, Inc., the owner of WPLG Local 10, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Omaha, NE.

12.  At all times, material hereto, the Defendant, VOX Media Group, Inc., owner of Bleeding Green Nation, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Washington, D.C.

13. At all times, material hereto, the Defendant, the Daily Caller, Inc., owner of the Daily Caller.com, is incorporated under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Washington, D.C.

14. At all times, material hereto, the Defendant, Cox Media Group, owner of FanBuzz.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in the State of Georgia.

15. At all times, material hereto, the Defendant, IBT Media, Inc. owner of IBI Times.com, a corporation organized and existing under the laws of the State of New York who is registered with the New York Department of State, with its principle place of business in New York, NY.

16. At all times, material hereto, the Defendant, the Microsoft Corporation, owner of MSN.com, a corporation organized and existing under the laws of the State of Delaware who is registered with the Delaware Department of State, with its principle place of business in Washington.

17. At all times, material hereto, the Defendant, Newsweek Media Group, Inc., owner of IBI Times.com, a corporation organized and existing under the laws of the State of New York, who is registered with the New York Department of State, with its principle place of business in New York, NY.

18. At all times, material hereto, the Defendant, Twenty-First Century Fox, Inc., owner of FOX News.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

4

19.    At all times, material hereto, the Defendant, FOX Corporation, owner of FOX News.com,

a corporation organized and existing under the laws of the State of Delaware, who is

registered with the Delaware Department of State, with its principle place of business in New

York, NY.

20.    At all times, material hereto, the Defendant, News Corporation, owner of the New York

Post, a corporation organized and existing under the laws of the State of Delaware, who is

registered with the Delaware Department of State, with its principle place of business in New

York, NY.

21.    At all times, material hereto, the Defendant, Verizon Media LLC, owner of

YAHOO.com, a corporation organized and existing under the laws of the State of Delaware

who is registered with the Delaware Department of State, with its principle place of business

in New York, NY.

22.    At all times, material hereto, the Defendant, Verizon Communications, Inc., owner of

YAHOO.com, a corporation organized and existing under the laws of the State of Delaware,

who is registered with the Delaware Department of State, with its principle place of business

in New York.

23.    At all times, material hereto, the Defendant, the Tribune Publishing Company, owner of

New York Daily News, a corporation organized and existing under the laws of the State of

Delaware, who is registered with the Delaware Department of State, with its principle place

of business in Chicago, IL.

24.    At all times, material hereto, the Defendant, Comcast Corp., owner of

profootballtalk.com, a corporation organized and existing under the laws of the State of

Pennsylvania, who is registered with the Pennsylvania Department of State, with its principle place of business in Pennsylvania.

25.   At all times, material hereto, the Defendant, NBCUniversal Media, owner of profootballtalk.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

26.   At all times, material hereto, the Defendant, Footballtalk LLC, owner of profootballtalk.com, a corporation organized and existing under the laws of the State of West Virginia, who is registered with the West Virginia Department of State, with its principle place of business in West Virginia.

27.   At all times, material hereto, the Defendant, the Gannett Company, owner of usatoday.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Virginia.

28.   At all times, material hereto, the Defendant, Warner Media LLC, owner of tmz.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

29.   At all times, material hereto, the Defendant, ESPN, Inc., owner of espn.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Bristol, CT.

6

30.	At all times, material hereto, the Defendant, New Media Investment Group, Inc., owner of Palm Beach Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

31.	At all times, material hereto, the Defendant, Gatehouse Media Management Services, Inc., owner of Palm Beach Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

32.	At all times, material hereto, the Defendant, Gatehouse Media Florida Holdings, Inc., owner of Palm Beach Post, a corporation organized and existing under the law s of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

33.	At all times, material hereto, the Defendant, CBS Corporation, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

34.	At all times, material hereto, the Defendant, Jasmine Brand, who is a citizen of California, is the Owner and operates the Website JasmineBrand.com.

35.	At all times, material hereto, the Defendant, Mahir Fadle, who is a citizen of California, is the Owner and operates the Website JasmineBrand.com.

36.	At all times, material hereto, the Defendant, Robert Littal, who is a citizen of California, is the Owner and operates the Website BlackSportsOnline.com.

## STATEMENTS OF FACTS

### DP's Background

37.	DP was born in Miami, FL and is 36 years of age and is a resident of the State of Florida.

7

38.     DP played in the NFL for ten years.

39.     DP is the biological father and legal guardian of one child who is 12-years-old.

40.     DP has never been charged with a crime by the State of Florida pursuant to Florida

        Jurisprudence 2d 1151, 1153, 1163, 1164, 1165, and Florida Statutes 27.181 and 28.222.

41.     DP has never had a warrant issued in his name pursuant to Florida Rules of Criminal

        Procedures 3.121, 3.131, and Florida Statute 28.222.

## SATISFACTION OF CONDITION PRECEDENT

42.     Plaintiff, DP, has provided notice to the Defendants as required by Fla. Stat. 770.01, and

        has satisfied all conditions precedent to the filing of this lawsuit. The Defendants have

        waived all conditions precedent to the filing of this lawsuit. True and correct copies of the

        Fla. Stat. 770.01 Notice Letters are attached hereto, see **Exhibit "B"**. The Notice demands

        for retractions of the defamatory and libelous statements, which have not been complied with

        by the Defendants by way of publishing any such retractions.

## DEFAMATORY STATEMENTS BY THE MIAMI HERALD MEDIA COMPANY

### ARTICLE 1

43.     Initially, Article 1 attempts to assassinate DP's character by stating that, "Dimitri

        Patterson left two Miami-Dade Police officers injured on Tuesday after he bolted from a

        courtroom when a judge ordered him placed under custody, police said", which is false. See

        **Exhibit "A"**

44.     Article 1 then states that, "Dimitri Patterson is expected to face charges including battery

        on a law enforcement officer", which is false. DP was never facing charges. See **Exhibit "A"**

45. Article 1 continues by stating that, Dimitri Patterson "was at the Lawson E. Thomas Courthouse in downtown Miami at a hearing before Judge William Altfield", which is completely false. See **Exhibit "A"**

46. Article 1 makes false claims stating that, "The judge ordered Dimitri Patterson to be taken into custody and he took off running", said Argemis Colome, a spokesperson for the Miami-Dade Police. This statement is completely false. See **Exhibit "A"**

47. Article 1 states that, "Dimitri Patterson knocked down a female police officer who hit her head", Colome said, which is completely false. See **Exhibit "A"**

48. Article 1 states that, "A male officer suffered a wrist injury", which is false. See **Exhibit "A"**

49. Article 1 continues character assassination of DP by writing about a purported arrest affidavit that was already proven to be an unlawful arrest and charges that were never filed against him. **See Exhibit "A"**

50. Article 1 goes on to state that, "Dimitri Patterson was there to meet the mother of his 1-year-old son", which is completely false. See **Exhibit "A"**

51. With the intent to cause irreparable harm to DP, Article 1 continues to recite defamatory statements in an ESPN.com article stating that, "Dimitri Patterson threw a woman and her son to the ground, causing the woman and child to suffer bruises on her neck and the back of the child's head", which are false.

52. Article 1 continues to makes false claims by stating that, "Dimitri Patterson was acquitted by a jury for culpable negligence and battery in July."

## ARTICLE 2

9

53.     Article 2 states that, "When former Miami Dolphins Cornerback Dimitri Patterson tried
to bolt from a hearing in family court Tuesday, it took five Miami-Dade police officers to
tackle him and get him under control" which is completely false. See **Exhibit "B"**.

54.     With clear malice intent by having full knowledge that the statements are false, Article 2
proceeds to recite every defamatory statement written in Article 1. See **Exhibit "B"**

## ARTICLE 3

55.     Article 3 states that, "The Orange County Sherriff Office arrested Dimitri Patterson late
Monday night for an active felony warrant" which is false. See **Exhibit "C"**.

56.     Article 3 continues by stating that "The charges from the warrant, according to his
booking log: battery and culpable negligence", which is false. See **Exhibit "C"**.

57.     Article 3 continues with character assassination by stating that, "This news and arrest
comes nine months after Patterson became combative while trying to flee a Miami-Dade
County courtroom in August", which is completely false. See **Exhibit "C"**.

58.     Article 3 continues stating that, "It took five police officers to tackle him and get him
under control", which is completely false. See **Exhibit "C"**.

## DEFAMATORY STATEMENTS BY THE JASMINE BRAND.COM

59.     "Exclusive: Ex Dolphins NFL'er Dimitri Patterson Sues Agent & Baby Mama, Accuses
Them of Ponzi Scheme"

60.     "Ex-Miami Dolphins cornerback Dimitri Patterson is accusing famed sports agent Drew
Rosenhaus and his baby mama of participating in a criminal Ponzi scheme against him."

61.     Patterson filed suit against Rosenhaus, Miami-Dade County, Miami Police Department,
his baby mama Erika Medina, several Miami County judges and several lawyers."

62.   "The scheme involves his baby mama allegedly suing him for paternity, which resulted in her lawyers making him believe a judge had ordered him to submit to a DNA test."

63.   "Then in 2015, he was arrested on charges of felony child abuse and battery."

64.   "He points to alleged incidents where he was coerced into paying tens of thousands to his baby mama and her lawyer."

### DEFAMATORY STATEMENTS BY BLACK SPORTS ONLINE.COM

65.   "Dimitri Patterson had a pretty solid NFL career before it all fell apart of when he went MIA from the Jets in 2014."

66.   "The scheme involves his baby mama allegedly suing him for paternity, which resulted in her lawyers making him believe a judge had ordered him to submit to a DNA test."

67.   "Then in 2015, he was arrested on charges of felony child abuse and battery."

### DEFAMATORY STATEMENTS BY THE @balleralert INSTAGRAM POST

68.   With the complete absence of a verified source the IG post imputes multiple felonies to the Plaintiff stating that, "Former NFL Player Dimitri Patterson was detained Tuesday after he injured two police officers." See Exhibit "A"

69.   The IG post then states that, "Patterson attempted to flee after a judge ordered him to be placed in custody. See Exhibit "A"

70.   With a high degree of awareness of the post's falsity the IG post continues by stating that, "While running, a female officer was knocked over by Patterson, consequently hitting her head. As a result, she was forced to go to the hospital." See Exhibit "A"

71.   The IG post makes false claims stating that, "Patterson also injured a male officer's wrist while fleeing. See Exhibit "A"

72.     The IG post continues character assassination of DP stating "Patterson will face charges, including battery on a law enforcement officer." See Exhibit "A"

### DEFAMATORY STATEMENTS IN THE SPORTS ILLUSTRATED ARTICLE, AND MEREDITH CORPORATION

73.     Initially, Article 1 attempts to assassinate DP's character by stating that, "DP injured two police officers while trying to abruptly exit a Miami-Dade courthouse and avoid being arrested, according to the Miami Herald", which is completely false. See Exhibit "A"

74.     The Article then states that, "A judge orders DP to be placed in custody, leading him to attempt to flee from the court, according to the Herald" which is false. See Exhibit "A"

75.     The Article continues by stating that, "While running, Patterson knocked down a female officer who hit her head, forcing her to go to the hospital, and he injured a male officer's wrist, according to the Herald" which is false. See Exhibit "A"

76.     The Article continues character assassination of DP by stating that, "In 2014, DP was with the Jets during the preseason, but was let go shortly after going missing and not showing up for a preseason game". Which is false. See Exhibit "A"

77.     The Article is false in its overall defamatory portrayal of DP as a violent, impulsive, unstable person. The Article is also defamatory in many of its specific details.

### DEFAMATORY STATEMENTS BY SUNBEAM TELEVISION CORPORATION/WSVN

78.     "The 34 year-old was handcuffed by U.S. Marshalls in Orlando for an active felony warrant issued on Nov. 1 out of Miami-Dade County".

79.     " Patterson was previously charged for battery on a law enforcement officers after he injured two cops while trying to escape a Downtown Miami courtroom on Aug 15".

80.     "Both officers were treated at Jackson Memorial Hospital and eventually released".

81. "Patterson was given a 180,000.00 bond and faces several charges including battery on law enforcement and resisting an officer without violence."

82. "He also has to surrender his passport".

83. "Two Miami-Dade Police officers were injured as they tried to stop a defendant, who happens to be a former Dolphins player, from fleeing the Lawson E Thomas Courthouse Center, Tuesday."

84. "According to police, one officer suffered a head injury and a second officer sustained a wrist injury while they tried to subdue 34-year-old former NFL player Dimitri Patterson."

85. "According to officials, when the first officer entered courtroom 2-A, Patterson attempted to flee. Patterson then tackled the officer, causing her to hit her head."

86. "Both officers were transported to Jackson Memorial Hospital and later released."

87. "Patterson was arrested for battery on a police officer, Tuesday afternoon."

88. "He has a hearing scheduled for Friday at 11 a.m."

89. "A former Miami Dolphins player arrested again months after Police say, he attacked two Miami-Dade Police Officers. U.S. Marshalls took Dimitri Patterson into custody in Orlando on a felony warrant out of Miami-Dade."

90. "The 34-year-old played Cornerback for the team from 2012 to 2013. Last August, Patterson was charged with battery on Law Enforcement Officers, after he injured two Cops trying to escape a downtown Miami courtroom."

91. "Those Officers were treated and eventually released."

92. "He was given a $180,000.00 bond and facing several charges, including battery on a Law Enforcement Officer and resisting an Officer without violence."

93.     "He also has to surrender his passport as well."

## DEFAMATORY STATEMENTS BY TRIBUNE PUBLISHING COMPANY AND NEW YORK DAILY NEWS

94.     " Former NFL cornerback injured two police officers during a failed escape from a

Miami-Dade courtroom on Tuesday, according to officials".

95.     "After a family court judge in Miami-Dade ordered Patterson placed under custody, the

34-year-old Miami native took off for the exit, tackling a female officer who was guarding

the courtroom doors, authorities told the Daily News."

96.     "Patterson injured a second officer who was also sent to the hospital with a minor wrist

injury, police said."

97.     "Patterson.....is expected to face charges of battery on a law enforcement officer".

98.     "Dimitri Patterson tried to escape from a Miami courtroom on Tuesday, but injured two

officers in the process."

## DEFAMATORY STATEMENTS BY FOX NEWS AND TWENTY-FIRST CENTURY FOX, INC.

99.     "Ex Miami Dolphins Player Dimitri Patterson Assaults 2 officers, officials say".

100.    "Two Florida police officers were injured Tuesday when a former NFL cornerback tried

to flee a Miami courthouse, officials said".

101.    "One officer suffered a head injury and a second officer sustained a wrist injury when

they tried to arrest Dimitri Patterson, 34, for contempt of court, police told WSVN."

102.    "Some type of scuffle where the police or bailiffs or officers—two of them got

involved," court interpreter Lucille Grenet told WSVN. "For whatever reason, the person

was resisting."

103.    "Both officers were sent to a hospital and later released"

## DEFAMATORY STATEMENTS BY NEWS CORP AND NEW YORK POST

104. "Former NFL cornerback Dimitri Patterson disappeared on the Jets"

105. "The 34 year old injured two police officers while trying to bolt out of a Miami Dade family courtroom Tuesday, after the judge told him he would be going to jail."

106. " Patterson…..will face more charges, including battery on a law enforcement officer, for trying to dash out of the courtroom, in the process knocking over an officer, who hit her head and was briefly hospitalized."

107. "Another officer suffered a wrist injury"

108. "In 2015 he faced felony child abuse charges, according to ESPN, for an incident in which an argument over a child support payments with an ex -girlfriend  allegedly ended with their 1-year-old son suffering a bruise to the head."

109. "The veteran cornerback went AWOL for 48 hours, missing a pre -season game with the Giants and being gone from the team without notice for a weekend."

## DEFAMATORY STATEMENTS BY THE GANNETT COMPANY, INC. AND USA TODAY

110. "Dimitri Patterson injures cops while running from court"

111. "Former NFL player Dimitri Patterson injured two police officers while running from court room after being detained by judge".

112. "Former NFL cornerback Dimitri Patterson injures two police officers while trying to escape a courtroom on Tuesday"

113. "According to the Miami Herald, a judge in Miami-Dade Family Court, ordered Patterson to be taken into custody, and he took off running and knocked down a female officer who hit her head; forcing her to go to the hospital".

114. "He also injured a male officer's wrist"

115.    "The 34-year-old was being detained Tuesday evening, and should face charges,

including battery on a law enforcement officer".

116.    "He was arrested in 2015 for felony child abuse, according to ESPN.

## DEFAMATORY STATEMENTS BY WARNER MEDIA, LLC, TMZ, AND BLEACHER REPORT

117.    " Ex- NFL Player Dimitri Patterson Tackled Cop... Police Report Says."

118.    " The defendant ran towards the door of the courtroom to exit."

119.    " While running towards the door, the defendant tackled officer B. Robert causing her to

fall backwards and sustaining an injury to the back of her head."

120.    "The Police report says Patterson continued to struggle with officers and pulled another

cop to avoid being handcuffed."

121.    "Patterson injured two police officers while trying to abruptly exit a Miami-Dade-

courthouse and avoid being arrested."

122.    "A female officer suffered neck and back injuries, and a male officer injured his wrist

while apprehending Patterson".

123.    "It took five Miami-Dade Police officers to tackle Patterson and get him under control."

124.    "Later adding Patterson arrest record reported that "with a handcuff around one wrist, he

tackled one cop and knocked another to the ground before three other officers joined in and

took control of the situation.

125.    "One cop suffered a head injury, another hurt a wrist."

126.    "Patterson was in a hearing for a potential contempt of court from a prior hearing, per

Rabin."

127.    "He was charged with both battery on a law enforcement officer and resisting arrest with

violence".

16

128.   "He was eventually arrested and booked for battery on an officer and resisting arrest—
both felonies."

129.   "Patterson injured two police officers while trying to abruptly exit a Miami-Dade-
courthouse and avoid being arrested."

130.   "A female officer suffered neck and back injuries, and a male officer injured his wrist
while apprehending Patterson".

131.   "It took five Miami-Dade Police officers to tackle Patterson and get him under control."

132.   "Later adding Patterson arrest record reported that "with a handcuff around one wrist, he
tackled one cop and knocked another to the ground before three other officers joined in and
took control of the situation.

133.   "One cop suffered a head injury, another hurt a wrist"

134.   "Patterson was in a hearing for a potential contempt of court from a prior hearing, per
Rabin."

135.   "He was charged with both battery on a law enforcement officer and resisting arrest with
violence".

## DEFAMATORY STATEMENTS BY VERIZON COMMUNICATIONS, INC. VERIZON MEDIA, LLC, AND YAHOO

136.   "Longtime NFL cornerback has tried giving cops the slip before, but wasn't successful
this time."

137.   "According to Jordan McPherson of the Miami Herald, Patterson was arrested this week
after a felony warrant was issued for him in Miami last November."

138.   "The charges from the warrant were for battery and culpable negligence."

139.   "He was detained in Orlando".

140.   "The Jets got rid of him after he failed to show up for a preseason game in 2014."

141. "Last summer Patterson injured two Police officers while trying to escape from a courtroom."

142. "Patterson was subsequently charged with battery on a law enforcement officer and resisting arrest with violence."

## DEFAMATORY STATEMENTS BY COMCAST CORP., NBC UNIVERSAL MEDIA, AND FOOTBALLTALK, LLC.

143. "Longtime NFL cornerback has tried giving cops the slip before, but wasn't successful this time."

144. "According to Jordan McPherson of the Miami Herald, Patterson was arrested this week after a felony warrant was issued for him in Miami last November."

145. "The charges from the warrant were for battery and culpable negligence."

146. "He was detained in Orlando".

147. "The Jets got rid of him after he failed to show up for a preseason game in 2014."

148. "Last summer Patterson injured two Police officers while trying to escape from a courtroom."

149. "A former Miami Dolphins player who was ordered into custody during a family court hearing in Miami on Tuesday injured two officers when he tried to flee, authorities said".

150. "As Patterson tried to run out a door, he tackled a female officer, who fell and hit her head, police said. Another female officer suffered a hand injury before Patterson was taken into custody."

151. "Former Eagles cornerback Dimitri Patterson injured two officers while he trying to flee during a family court hearing on Tuesday, according to the police", via the Miami Herald.

152. "Patterson was charged with felony child abuse in 2015 after an altercation with his former girlfriend in Aventura ended with his 1-year-old son being bruised, ESPN reported."

18

153.    "Patterson met his ex-girlfriend at Aventura Mall on August 1, 2015, for a custody
        exchange of their 1-year-old child when an argument ensued over child support payments."

154.    "While placing the boy in the back seat of the car, Medina told Patterson to calm down,
        warning him that she wouldn't allow him to take the child," Cimini reported.

155.    "Patterson grabbed her around her neck and threw her to the ground, according to the
        incident report."

156.    "While this occurred, Medina was holding [the boy]. This action caused him to fall also
        and hit his head".

157.    "Court records show Patterson was eventually acquitted of battery and culpable
        negligence and battery."

158.    "Patterson was last with the Jets in 2014 but suspended indefinitely by the team after
        leaving without contacting the organization."

## DEFAMATORY STATEMENTS BY VOX MEDIA, INC. AND BLEEDING GREEN NATION

159.    "Patterson recently injured two police officers while trying to escape from a courtroom,
        per ESPN".

160.    "When the judge ordered his arrest, Patterson attempted to bolt from the courtroom and
        tackled two officers, police said."

## DEFAMATORY STATEMENTS BY BH MEDIA GROUP, INC., AND WPLG LOCAL 10

161.    "Two officers were injured Tuesday when a former Miami Dolphin cornerback tried to
        escape from a courtroom at the Lawson E. Thomas Courthouse Center in downtown Miami,
        authorities said."

162. "Miami-Dade Police spokeswoman Jennifer Capote said Dimitri Patterson, 34, was appearing in family court in the courthouse at 175 N.W. First Ave. when Judge William Altfield told him that he would be going to jail."

163. "Authorities said Patterson tried to escape from courtroom 2A and tackled a female officer."

164. "The officer struck her head and was taken to a hospital."

165. "Capote said another officer suffered minor injuries during the attempted escape."

166. "Patterson was arrested after an incident with his child's mother on August. 1, 2015, at the Aventura Mall."

167. "Patterson met his girlfriend for a custody exchange of their then 1-year-old son and an argument ensued over child support payments."

168. "Police said that the baby suffered a bruise to the back of his head."

169. "Authorities said the ex-girlfriend, Erika Medina, suffered redness to her neck area and a cut to her left elbow."

170. "Patterson was arrested on charges of felony child abuse and misdemeanor battery".

171. "Records show that Patterson was previously acquitted by a jury on charges of misdemeanor battery and culpable negligence."

### DEFAMATORY STATEMENTS BY THE DAILY CALLER, INC.

172. "Dimitri Patterson, a former cornerback for the Miami Dolphins, injured two police officers in a Miami courthouse on Tuesday."

173. "The officers were trying to arrest Patterson for contempt of court when he began to flee."

174.  "As he attempted to flee the courtroom, one officer suffered a head injury, while the other one hurt their wrist."

175.  "A court reporter told WSVN, 'Some type of scuffle where the police or bailiffs or officers—two of them got involved. For whatever reason, the person was resisting."

176.  "The officers both went to the hospital after the incident, but were later released."

177.  "Patterson was arrested for battery of a police officer and has added a charge to whatever the reason he was in court in the first place".

## DEFAMATORY STATEMENTS BY THE COX MEDIA GROUP AND FANBUZZ

178.  "A former NFL cornerback got so combative during a court hearing that it took five officers to subdue him, and two were injured in the process, according to an arrest affidavit reviewed by the Miami Herald."

179.  " Dimitri Patterson......was arrested after the altercation in Miami Dade Circuit Court."

180.  "He was charged, the Herald reported, with battery on a law enforcement officer and resisting arrest with violence."

181.  "Patterson was in court on Tuesday.....when a judge ordered him taken into custody, he tried to bolt the courtroom."

182.  "Police told the Herald that a female officer hit her head and a male officer injured his wrist while trying to subdue Patterson."

183.  "Failed to show up for a pre-season game"

## DEFAMATORY STATEMENTS BY IBT MEDIA, INC., NEWSWEEK MEDIA GROUP, INC., AND IBTIMES.COM

184.  "*Ex- NFL player Dimitri Patterson arrested for injuring two cops while fleeing court.*"

185.  "An officer reportedly suffered a head injury and another officer suffered a wrist injury as they attempted to subdue Patterson."

21

186.    "According to the Miami Herald, Patterson lost his cool while Miami Dade Circuit Judge
William Altfield determined whether to charge him with contempt of court from an earlier
hearing."

187.    "The court became concerned with Patterson's behavior and requested police presence to
"keep the peace".

188.    " As he was being taken into custody, Patterson ran towards the  doors of the Lawson E.
Thomas Courthouse Center."

189.    "With one hand in handcuffs, he tackled one officer and knocked down another to the
ground."

190.    "Patterson was taken into custody on Tuesday and charged with battery on a law
enforcement officer and resisting arrest with violence."

191.    "Patterson was acquitted by a jury for culpable negligence and battery in July."

## DEFAMATORY STATEMENTS BY MICROSOFT CORPORATION AND MSN.COM

192.    *"Former  Player Dimitri Patterson Injures Cops While Running From Court"*

193.    *" Former NFL Player Dimitri Patterson injured two police officers while running from
court room after being detained by judge. "*

## DEFAMATORY STATEMENTS BY ESPN, INC.

194.    "Dimitri Patterson in custody after courtroom escape attempt".

195.    "A female officer suffered neck and back injuries, and a male officer injured his wrist
while apprehending Patterson"

196.    "Patterson appeared in a "family court" hearing on Tuesday due to a prior incident
"He could face additional charges, and he remains in custody".

22

197.   "When the judge ordered his arrest, Patterson attempted to bolt the courtroom and tackled two officers, police said."

198.   "Dimitri Patterson Facing Felony Child Abuse Charge".

199.   "Former NFL cornerback Dimitri Patterson, went AWOL from the New York Jets, is facing a felony child abuse charge stemming from an Aug. 1 altercation."

200.   "Met a former girlfriend for a custody exchange of their 1-year-old son and an argument ensued over child support payments, according to an Aventura Police Department report."

201.   "The alleged incident ended with the child suffering a bruise to the back of the head."

202.   "Ericka Medina, 28, who told police she dated Patterson for four years, suffered redness to her neck area and a cut to her left elbow."

203.   "Medina told police that Patterson displayed "an aggressive tone.""

204.   "She wanted to document it because Patterson had been "violent to her in the past.""

205.   "Patterson "grabbed her around her neck and threw her to the ground.""

206.   " This action caused [him] to fall also and hit his head."

207.   "An eyewitness who works at the shopping mall corroborated the account with a statement to police."

208.   "In addition to child abuse, he was charged with misdemeanor battery."

209.   "The Jets were blindsided when Patterson never showed up for a preseason game."

210.   "He was AWOL for 48 hours".

211.   "Eight days after the team confirmed he was missing."

## DEFAMATORY STATEMENTS BY GATEHOUSE MEDIA AND PALM BEACH POST

212.   " Dimitri Patterson,.....attended a hearing at Lawson E. Thomas Courthouse Center in Miami on Tuesday, according to the Miami Herald."

213. "Following Judge William Altfield's order that Patterson be taken into custody, Patterson ran out of the courtroom, knocking over a female officer and causing her to hit her head."

214. "Patterson was arrested in 2015 and charged with felony child abuse."

215. "Court records obtained by the Miami Herald also show that he was acquitted for culpable negligence and battery in July."

216. "Patterson was.....charged with battery on a law enforcement officer.

## STATEMENTS BY CBS CORPORATION

217. "Courtroom chaos today involving a former member of the Miami Dolphins".

218. "Thirty-four-year-old Dimitri Patterson, was booked into jail tonight".

219. "He's accused of running from a courtroom at the family courthouse of Miami when an Officer tried to place him into custody".

220. "A female Officer hurt her head in the melee, and another Officer hurt his wrist. Patterson played eight games for the Dolphins in 2012 and 2013".

## FALSITY

221. All of the Articles are false in their overall portrayal of DP as a violent, impulsive, unstable, heartless, cruel person, who is abusive to women and children, and a fugitive evading felony charges. The Articles are also defamatory in many of their specific details.

222. DP never injured any police officers while running out of a courtroom at the Lawson E. Thomas Courthouse in downtown Miami, nor did a Judge order for him to be taken into custody. There are cameras outside and inside the courtroom, which supports this and there are no official judicial proceedings or documentation that exists of a judge holding DP in contempt of court.

223. DP was never facing the charge of battery on a law enforcement officer, nor was there a legal hearing requiring DP to be at the Lawson E. Thomas Courthouse. You must first have a valid case number with a legal charging document on file. This can easily be proven by requesting copies of certified court records from the Clerk.

224.    All of the Defendants' Articles are published based on a purported person, or, on an

unverified source. In addition, there is no record of an official statement from a Miami-Dade

Police Officer, nor did the Defendants publish a Final Police Report.

225.    DP does not have a 1-year-old son, nor did he do any of the defamatory statements in

any of the Defendants' Articles.

226.    DP was never legally acquitted of battery and culpable negligence by a jury in July,

2017, because he was never legally charged with those two crimes. You cannot acquit a

person of a crime that they were never charged with pursuant to Florida law.

227.    DP has never had a warrant issued for his arrest with the purported charges of battery

and culpable negligence.

228.    The Orange County Sherriff's Office did not find DP in Orlando, nor did they arrest

him on a warrant.

229.    There is no legal enforceable Order issuing a $180,000.000 bond.

230.    DP has never been indicted of a crime pursuant to Florida law.

231.    There is no legal enforceable Administrative Child Support Order.

232.    DP never choked the purported victim at the Aventura Mall.

233.    DP never abused a person in his life.

## MALICE

234.    Malice is defined as, when a statement is made with knowledge that it was false, or, reckless

disregard, whether it was false or not. *New York Times Co v. Sullivan* 376 U.S. at 279-80 (1964). The

Defendant's state of mind can be proved circumstantially as well. *See St. Amant v. Thompson*, 390

U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th

Cir. 1983). A Defendant must prove truth in defamation cases, because the common law presumes any

statement made with defaming effect was false. *Jones, Varnum & Co. v. Townsend's Administratrix*, 21 Fla. 431 (1885). Accord, *Firestone v. Time, Inc.*, 460 F.2d 712, 722 (5th Cir. 1972) (Bell, J. concurring); *Curtis Publishing Co. v. Fraser*, 209 F.2d 1, 9 n. 6 (5th Cir. 1954); *Drennen v. Westinghouse Elec. Corp.*, 328 So.2d 52, 55 (Fla. 1st DCA 1976); *Miami Herald Publishing Co. v. Brautigam*, 127 So.2d 718, 723 (Fla. 3d DCA 1961).

235.    Inasmuch as defendants did not know the statement was false, plaintiff's claim rests on proof of a reckless disregard of whether it was false or not. To satisfy the reckless disregard standard, plaintiff had to establish that defendants in fact " 'entertained serious doubts as to the truth of the publication' " or that they actually had a "'high degree of awareness of its probable falsity'" (*Harte-Hanks Communications v Connaughton*, 491 US 657, 667,.

236.    The Defendants had no qualified privilege to make false and defamatory statements against the Plaintiff, nor was there any interest, or, a legal, moral, or, social duty in regard to a certain subject (Dimitri Patterson), when speaking to another "having a corresponding interest or duty." Examples: "a communication to an employer regarding his employee's performance"; "communications for bona fide commercial purposes where the interest to be protected is the recipient's"; "statements of a citizen to a political authority regarding matters of public concern."

237.    Whether there was a privilege, apart from the question of its abuse, may be determined by the court, if the evidence is undisputed. *Nodar v. Galbreath*, 462 So.2d 803 (Fla. 1984); See, *e.g.*, *Knepper v. Genstar Corp.*, 537 So.2d 619 (Fla. 3d DCA 1988); *Drennen v. Westinghouse Electrical Corp.*, 328 So.2d 52 (Fla. 1st DCA 1976). Contrast *Nodar*, 462 So.2d at 810. The evidence shows that the Defendants did not publish the defamatory article in truth, or, with good motive. The objective was simply to secure an irresistible story at the expense of the Plaintiff's reputation and well-being. In Florida, a defendant is at fault if he was at least negligent. *Miami Herald Publishing Co. v. Ane*, 458

So.2d 239 (Fla. 1984).

238.    All Defendants published their defamatory articles by citing inaccurate details from an underlined source.

239.    There is no <u>official statement</u> by a government official documented at the time the defamatory articles were published.

240.    The evidence proves all Defendants knew the statements were false because they published the defamatory articles without a verified source. This proves all of the Defendants had a high degree of awareness of the Articles falsity.

241.    All of the Defendants purposefully avoided verifying an official statement by a government official, this "inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the published statements (<u>*Harte-Hanks Communications v Connaughton*, 491 US, at 692,</u> This proves the intentional avoidance of truth. See **Exhibit "A"**.

242.    The Articles fall well short of an authentic news dispatch, because it lacks verified sources and are hearsay.

243.    All of the Defendants imputed multiple felonies to the Plaintiff. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The <u>law presumes malice in their utterance</u>," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are "… of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236

## NO FAIR REPORTING PRIVILEGE

244.    A newspaper 'has a qualified privilege to report accurately on information received
from government officials. The privilege extends to the publication of the contents of official
documents, as long as the account is reasonably accurate and fair.' *Rasmussen v. Collier
County Pub. Co.*, 946 So.2d 567, 570-71 (Fla. 2d DCA 2006). 'This statement merely means
that the report of judicial proceedings must be correct.' *Walsh v. Miami Herald Pub. Co.*, 80
So.2d 669, 671 (Fla.1955).

245.    There is no evidence that proves all of the Defendants republished accurate, fair, and
impartial statements from a government official, or, obtained information from official court
proceedings and records, which constitutes deliberate avoidance of the truth by the
Defendants.

246.    A final police report was never reported on. Therefore, the Fair Reporting Privilege is
not a viable defense for the Defendants.

247.    There are no official records that detail official judicial proceedings in this action. The
unlawful arrest of the Plaintiff on August 15, 2017, was not an official judicial proceeding,
nor was there an official arrest warrant presented at the time of the unlawful arrest on May 7,
2018.

248.    The evidence proves all of the Defendants cannot and will not prove they received an
official statement from a government official before the defamatory articles were published,
which proves that all of the Defendants had reckless disregard and purposefully avoided the
truth. See **Exhibit "A"**

249. The evidence shows the Defendants cannot and will not prove they received an official warrant pursuant to Florida Rules of Criminal Procedure 3.121 and 3.131 before publishing the Article, which proves the Defendants deliberately avoided finding the facts.

250. The evidence proves that all of the Defendants sources are unverified and do not exist.

251. Out of their own imagination, all of the Defendants published the Articles with negligence, gross irresponsibility, and with actual malice. The Defendants knew that they were publishing a devastating portrait of the Plaintiff as a violent, impulsive, unstable, heartless, and cruel person without any verified source to support their Articles.

252. "Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports". *St. Amant v. Thompson,* 390 U.S. at 732, 88 Ct. 1323.

253. Here, the evidence proves the Defendants' Articles are based wholly on unverified anonymous sources. See **Exhibit "A"**

254. The Defendants cannot and will not prove they reported on an official judicial proceeding.

255. With full knowledge of the absence of a verified official statement from a government official or official records, the Defendants knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

256.    There are no official records that detail official judicial proceedings in this action. The
        unlawful arrest of the Plaintiff on August 15, 2017 was not an official judicial proceeding.

257.    The Defendants had obvious reasons to doubt the veracity of the information reported
        because there was no evidence of official records or an official statement from a government
        official when the Articles were published.

258.    The evidence proves that the Defendants published the defamatory articles with no
        evidence of an official statement by a government official or official documentation, which
        proves the Defendants had a high degree of awareness of the falsity of the publications.

259.    To publish defamatory statements without an official statement by a government
        official or, official records, is a product of a deliberate decision not to acquire knowledge of
        facts that might confirm the probable falsity of the defamatory statements proving that only a
        reckless publisher such as the Defendants, would have put such allegations into circulation.

## COUNT 1
## (General Defamation)
## The Meredith Corporation

260.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-
        259, inclusive, as it is fully stated herein.

261.    The Defendant wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The defamatory statements prove to be defamation.

262.    Defendant's defamatory statements were not privileged.

263.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

264.    Here, the evidence proves the Defendant's Articles are based wholly on unverified
        anonymous sources.

265.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

266. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

267. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

268. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

269. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

270. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### The Meredith Corporation

271. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-

259 inclusive, as it is fully stated herein.

272.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

273.    The Defendant's defamatory statements were not privileged.

274.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

275.    The Defendant imputed multiple felonies to the Plaintiff.

276.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 73-77, and 221-259 as a result he is entitled to damages and injunctive relief.

277.    A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT III**
**(Defamation by Implication)**
**The Meredith Corporation**

278.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259 inclusive, as it is fully stated herein.

279.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

280.   The Defendant's defamatory statements were not privileged.

281.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

282.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

283.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

284.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

285.   The false impression of the Plaintiff given in paragraphs 37-41, 73-77, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

**COUNT IV**
**(Intentional Infliction of Emotional Distress)**
**The Meredith Corporation**

33

286.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259, inclusive, as it is fully stated herein.

287.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

288.    The defamatory statements described in paragraphs 37-41, 73-77, and 221-259 constitute outrageous conduct against the Plaintiff.

289.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

290.    A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

291.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

### COUNT V
### (Invasion of Privacy – False Light)
### The Meredith Corporation

292.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259, inclusive, as it is fully stated herein.

293.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

294.    Defendant's defamatory statements were not privileged.

295. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

296. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

297. The Defendant cannot and will not prove they reported on an official judicial proceeding.

298. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

299. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

300. The Defendant has interfered with the Plaintiff's right to be left alone.

301. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

302. A reasonable person will find the Defendant's publication to be highly offensive.

303. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

304. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

305. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### The Meredith Corporation

306.   The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

307.   The Defendant failed to use reasonable care when publishing the defamatory statements.

308.   A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

309.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

310.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

311.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-

259, inclusive, as it is fully stated herein.

312.    The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

313.    Defendant's defamatory statements were not privileged.

314.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

315.    Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

316.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

317.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

318.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

319.    With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

320.    The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

321.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

322.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259 inclusive, as it is fully stated herein.

323.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

324.    The Defendant's defamatory statements were not privileged.

325.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

326.    The Defendant imputed multiple felonies to the Plaintiff.

327.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 68-72, and 221-259 as a result he is entitled to damages and injunctive relief.

328.    A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

329. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-
259, inclusive, as it is fully stated herein.

330. The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation
by implication.

331. The Defendant's defamatory statements were not privileged.

332. Defamation by implication is an intentional tort recognized in Florida. See *Jews
for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of
character that happens from what is implied when a defendant (1) juxtaposes a series of facts
so as to imply a defamatory connection between them; or (2) creates a defamatory
implication by omitting facts.

333. The Defendant maliciously published the false statements about the Plaintiff, and these
statements were defamatory in that they created false impressions of the Plaintiff.

334. The Defendant severely juxtaposed a series of facts so as to imply a defamatory
connection between them or, in the alternative, created a defamatory implication by omitting
facts when describing the nature and sequence of events.

39

335. A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

336. The false impression of the Plaintiff given in paragraphs 37-41, 68-72, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

337. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259, inclusive, as it is fully stated herein.

338. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

339. The defamatory statements described in paragraphs 37-41, 68-72, and 221-259 constitute outrageous conduct against the Plaintiff.

340. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

341. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

342. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

343. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259, inclusive, as it is fully stated herein.

344. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

345. Defendant's defamatory statements were not privileged.

346. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

347. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

348. The Defendant cannot and will not prove they reported on an official judicial proceeding.

349. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

350. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

351. The Defendant has interfered with the Plaintiff's right to be left alone.

352. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

353. A reasonable person will find the Defendant's publication to be highly offensive.

354. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

355. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

356. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

357. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

358. The Defendant failed to use reasonable care when publishing the defamatory statements.

359. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

360. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

361. Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
## (General Defamation)
## Warner Media LLC, TMZ, Bleacher Report

362. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 117-135, and
     221-259, inclusive, as it is fully stated herein.

363. The Defendant wrongfully and with actual malice and gross negligence, caused to be
     published the statements set forth above. The defamatory statements prove to be defamation.

364. Defendant's defamatory statements were not privileged.

365. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

366. Here, the evidence proves the Defendant's Articles are based wholly on unverified
     anonymous sources.

367. The Defendant cannot and will not prove they reported on an official judicial proceeding.

368. This was the case where the articles published were a complete fabrication with no
     official statement by a government official in existence when the Defendant published the
     Articles, which proves that the Defendant knew the statements were false and purposefully
     avoided the truth.

369.   The evidence proves that the Defendant published the defamatory articles with no
       evidence of an official statement by a government official or official documentation, which
       proves the Defendant had a high degree of awareness of the falsity of the publications.

370.   With full knowledge of the absence of a verified official statement from a government
       official, or, official records, the Defendant knowingly, maliciously, and recklessly published
       defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
       disseminate the defamatory statements throughout the internet and the State of Florida.

371.   The Defendant had obvious reasons to doubt the veracity of the information reported
       because there was no evidence of official records or an official statement from a government
       official when the Defendant published the Articles.

372.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
       distress, anguish, substantial damage to his well-being, overwhelming damage to his external
       reputation, and devastating damage to his family, personal, community, civic, and business
       relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
       and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
       Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### Warner Media LLC, TMZ, Bleacher Report

373.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 117-135, and
       221-259 inclusive, as it is fully stated herein.

374.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

375.    The Defendant's defamatory statements were not privileged.

376.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

377.    The Defendant imputed multiple felonies to the Plaintiff.

378.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 117-135, and 221-259 as a result he is entitled to damages and injunctive relief.

379.    A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Warner Media LLC, TMZ, Bleacher Report

380.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 117-135, and

221-259, inclusive, as it is fully stated herein.

381.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

382.    The Defendant's defamatory statements were not privileged.

383.    Defamation by implication is an intentional tort recognized in Florida. See *Jews

*for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory

implication by omitting facts.

384.    The Defendant maliciously published the false statements about the Plaintiff, and these

statements were defamatory in that they created false impressions of the Plaintiff.

385.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory

connection between them or, in the alternative, created a defamatory implication by omitting

facts when describing the nature and sequence of events.

386.    A reasonable person would understand the Defendant's statements to impart the false

innuendo, which would be highly offensive to a reasonable person.

387.    The false impression of the Plaintiff given in paragraphs 37-41, 117-135, and 221-259,

which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,

therefore, he is entitled to damages and injunctive relief.

### COUNT IV
### (Intentional Infliction of Emotional Distress)
### Warner Media LLC, TMZ, Bleacher Report

388.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 117-135, and

221-259, inclusive, as it is fully stated herein.

389.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

390.   The defamatory statements described in paragraphs 37-41, 117-135, and 221-259 constitute outrageous conduct against the Plaintiff.

391.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress

392.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

393.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Warner Media LLC, TMZ, Bleacher Report

394.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 117-135, and 221-259, inclusive, as it is fully stated herein.

395.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

396.   Defendant's defamatory statements were not privileged.

397. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

398. Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

399. The Defendant cannot and will not prove they reported on an official judicial proceeding.

400. This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

401. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

402. The Defendant has interfered with the Plaintiff's right to be left alone.

403. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

404. A reasonable person will find the Defendant's publication to be highly offensive.

405. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

406. With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

407. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Warner Media LLC, TMZ, Bleacher Report

408.   The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

409.   The Defendant failed to use reasonable care when publishing the defamatory statements.

410.   A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

411.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

412.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### NBC Universal Media LLC And Comcast Corp.

413.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and 221-259, inclusive, as it is fully stated herein.

49

414. The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

415. Defendant's defamatory statements were not privileged.

416. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

417. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

418. The Defendant cannot and will not prove they reported on an official judicial proceeding.

419. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

420. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

421. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

422. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

423. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external

50

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## NBC Universal Media LLC And Comcast Corp.

424.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and

221-259 inclusive, as it is fully stated herein.

425.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

426.    The Defendant's defamatory statements were not privileged.

427.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

428.    The Defendant imputed multiple felonies to the Plaintiff.

429.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 143-158, and 221-259 as a result he is entitled to damages and

injunctive relief.


430.    A statement is defamatory per se, recognized and deeply rooted in Florida law,

51

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### NBC Universal Media LLC And Comcast Corp.

431.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and

221-259, inclusive, as it is fully stated herein.

432.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

433.    The Defendant's defamatory statements were not privileged.

434.    Defamation by implication is an intentional tort recognized in Florida. See *Jews*

*for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory

implication by omitting facts.

435.    The Defendant maliciously published the false statements about the Plaintiff, and these

statements were defamatory in that they created false impressions of the Plaintiff.

436.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory

connection between them or, in the alternative, created a defamatory implication by omitting

52

facts when describing the nature and sequence of events.

437.  A reasonable person would understand the Defendant's statements to impart the false
      innuendo, which would be highly offensive to a reasonable person.

438.  The false impression of the Plaintiff given in paragraphs 37-41, 143-158, and 221-259,
      which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,
      therefore, he is entitled to damages and injunctive relief.

## COUNT IV
## (Intentional Infliction of Emotional Distress)
## NBC Universal Media LLC And Comcast Corp.

439.  The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and
      221-259, inclusive, as it is fully stated herein.

440.  The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,
      recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,
      which they knew or should have known to be false.

441.  The defamatory statements described in paragraphs 37-41, 143-158, and 221-259
      constitute outrageous conduct against the Plaintiff.

442.  The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
      alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
      disregard of the high probability of causing the Plaintiff to suffer emotional distress.

443.  A reasonable person in Plaintiff's position would consider Defendant's conduct as
      outrageous.

444.  The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
      Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### NBC Universal Media LLC And Comcast Corp.

445.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and 221-259, inclusive, as it is fully stated herein.

446.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

447.    Defendant's defamatory statements were not privileged.

448.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

449.    Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

450.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

451.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

452.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

453.    The Defendant has interfered with the Plaintiff's right to be left alone.

454.   The Defendant disseminated statements to the public. Restatement (Second) of Torts §
       652D comment a (1977).

455.   A reasonable person will find the Defendant's publication to be highly offensive.

456.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

457.   With full knowledge of the absence of a verified official statement from a government
       official, or, official records, the Defendant knowingly, maliciously, and recklessly published
       defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
       disseminate the defamatory statements throughout the Internet and the State of Florida.

458.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
       distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external
       reputation, and devastating damage to his family, personal, community, civic, and business
       relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
       and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
       Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### NBC Universal Media LLC And Comcast Corp.

459.   The Defendant was negligent when publishing defamatory statements in the article
       above, which inflicted emotional distress on the Plaintiff.

460.   The Defendant failed to use reasonable care when publishing the defamatory statements.

461.   A reasonable publisher under similar circumstances would not have published the
       defamatory statements in the article above.

462.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

463.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
## (General Defamation)
## Sunbeam Television Corporation

464.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 78-93, and 221-

        259, inclusive, as it is fully stated herein.

465.    The Defendant wrongfully and with actual malice and gross negligence, caused to be

        published the statements set forth above. The defamatory statements prove to be defamation.

466.    Defendant's defamatory statements were not privileged.

467.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

468.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

        anonymous sources.

469.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

470.    This was the case where the articles published were a complete fabrication with no

        official statement by a government official in existence when the Defendant published the

        Articles, which proves that the Defendant knew the statements were false and purposefully

        avoided the truth.

471.    The evidence proves that the Defendant published the defamatory articles with no

        evidence of an official statement by a government official or official documentation, which

        proves the Defendant had a high degree of awareness of the falsity of the publications.

56

472.    With full knowledge of the absence of a verified official statement from a government

official, or, official records, the Defendant knowingly, maliciously, and recklessly published

defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to

disseminate the defamatory statements throughout the internet and the State of Florida.

473.    The Defendant had obvious reasons to doubt the veracity of the information reported

because there was no evidence of official records or an official statement from a government

official when the Defendant published the Articles.

474.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## Sunbeam Television Corporation

475.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 78-93, and 221-

259 inclusive, as it is fully stated herein.

476.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

477.    The Defendant's defamatory statements were not privileged.

478.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages

479.    The Defendant imputed multiple felonies to the Plaintiff.

480.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 78-93, and 221-259 as a result he is entitled to damages and

injunctive relief.

481.    A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Sunbeam Television Corporation

482.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 78-93, and 221-

259, inclusive, as it is fully stated herein.

483.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

484.    The Defendant's defamatory statements were not privileged.

485.    Defamation by implication is an intentional tort recognized in Florida. See *Jews*

*for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

486.    The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

487.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

488.    A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

489.    The false impression of the Plaintiff given in paragraphs 37-41, 78-93, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Sunbeam Television Corporation

490.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 78-93, and 221-259, inclusive, as it is fully stated herein.

491.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

492.    The defamatory statements described in paragraphs 37-41, 78-93, and 221-259 constitute outrageous conduct against the Plaintiff.

493.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

        alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless

        disregard of the high probability of causing the Plaintiff to suffer emotional distress.

494.    A reasonable person in Plaintiff's position would consider Defendant's conduct as

        outrageous.

495.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

        Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

        proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

        relief.

### COUNT V
### (Invasion of Privacy – False Light)
### Sunbeam Television Corporation

496.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 78-93, and 221-

        259, inclusive, as it is fully stated herein.

497.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

        published the statements set forth above. The published statements by the Defendant

        portrayed the Plaintiff in a false light to the public.

498.    Defendant's defamatory statements were not privileged.

499.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

500.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

        anonymous sources.

501.    The Defendant cannot and will not prove they reported on an official judicial

        proceeding.

502. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

503. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

504. The Defendant has interfered with the Plaintiff's right to be left alone.

505. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

506. A reasonable person will find the Defendant's publication to be highly offensive.

507. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

508. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

509. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT VI**
**(Negligent Infliction of Emotional Distress)**

## Sunbeam Television Corporation

510.    The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

511.    The Defendant failed to use reasonable care when publishing the defamatory statements.

512.    A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

513.    As a result of the Defendant's negligence, the Plaintiff has been severely injured.

514.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
## (General Defamation)
## Twenty-First Century Fox, Inc., And Fox Corp.

515.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 99-103, and

221-259 inclusive, as it is fully stated herein.

516.    The Defendant wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation.

517.    Defendant's defamatory statements were not privileged.

518.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

519.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

520.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

521.    This was the case where the articles published were a complete fabrication with no
        official statement by a government official in existence when the Defendant published the
        Articles, which proves that the Defendant knew the statements were false and purposefully
        avoided the truth.

522.    The evidence proves that the Defendant published the defamatory articles with no
        evidence of an official statement by a government official or official documentation, which
        proves the Defendant had a high degree of awareness of the falsity of the publications.

523.    With full knowledge of the absence of a verified official statement from a government
        official, or, official records, the Defendant knowingly, maliciously, and recklessly published
        defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
        disseminate the defamatory statements throughout the internet and the State of Florida.

524.    The Defendant had obvious reasons to doubt the veracity of the information reported
        because there was no evidence of official records or an official statement from a government
        official when the Defendant published the Articles.

525.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
        distress, anguish, substantial damage to his well-being, overwhelming damage to his external
        reputation, and devastating damage to his family, personal, community, civic, and business
        relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
        and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
        Patterson, and he is entitled to damages and injunctive relief.

**COUNT II**
**(Defamation Per Se)**
**Twenty-First Century Fox, Inc., And Fox Corp.**

526.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 99-103, and 221-
259  inclusive, as it is fully stated herein.

527.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation
*per se.*

528.    The Defendant's defamatory statements were not privileged.

529.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

530.    The Defendant imputed multiple felonies to the Plaintiff.

531.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his well-being, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson in paragraphs 37-41, 99-103, and 221-259 as a result he is entitled to damages and
injunctive relief.

532.    A statement is defamatory per se, recognized and deeply rooted in Florida law,
when statements are so powerful in their ability to hurt someone that the law presumes harm
as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law
presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592
(1906), where the words are ". . . of such common notoriety established by the general
consent of men, that the courts must of necessity take judicial notice of its harmful effect.
Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Twenty-First Century Fox, Inc., And Fox Corp.

533. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 99-103, and 221-259, inclusive, as it is fully stated herein.

534. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

535. The Defendant's defamatory statements were not privileged.

536. Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

537. The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

538. The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

539. A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

540. The false impression of the Plaintiff given in paragraphs 37-41, 99-103, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Twenty-First Century Fox, Inc., And Fox Corp.

541.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 99-103, and 221-259, inclusive, as it is fully stated herein.

542.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

543.    The defamatory statements described in paragraphs 37-41, 99-103, and 221-259 constitute outrageous conduct against the Plaintiff.

544.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

545.    A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

546.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Twenty-First Century Fox, Inc., And Fox Corp.

547.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 99-103, and 221-259, inclusive, as it is fully stated herein.

548.  The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

549.  Defendant's defamatory statements were not privileged.

550.  Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

551.  Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

552.  The Defendant cannot and will not prove they reported on an official judicial proceeding.

553.  This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

554.  The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

555.  The Defendant has interfered with the Plaintiff's right to be left alone.

556.  The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

557.  A reasonable person will find the Defendant's publication to be highly offensive.

558.  As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

559.  With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published

defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

560. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Twenty-First Century Fox, Inc., And Fox Corp.

561. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

562. The Defendant failed to use reasonable care when publishing the defamatory statements.

563. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

564. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

565. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)

**Verizon Media LLC And Verizon Communications, Inc.**

566.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 136-142, and
        221-259, inclusive, as it is fully stated herein.

567.   The Defendant wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The defamatory statements prove to be defamation.

568.   Defendant's defamatory statements were not privileged.

569.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

570.   Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u>
        anonymous sources.

571.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

572.   This was the case where the articles published were a complete fabrication with no
        <u>official statement by a government official</u> in existence when the Defendant published the
        Articles, which proves that the Defendant knew the statements were false and purposefully
        avoided the truth.

573.   The evidence proves that the Defendant published the defamatory articles with no
        evidence of an official statement by a government official or official documentation, which
        proves the Defendant had a high degree of awareness of the falsity of the publications.

574.   With full knowledge of the absence of a <u>verified official statement</u> from a government
        official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published
        defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
        disseminate the defamatory statements throughout the internet and the State of Florida.

575.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

576.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### Verizon Media LLC And Verizon Communications, Inc.

577.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 136-142, and 221-259 inclusive, as it is fully stated herein.

578.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

579.   The Defendant's defamatory statements were not privileged.

580.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

581.   The Defendant imputed multiple felonies to the Plaintiff.

582.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 136-142, and 221-259 as a result he is entitled to damages and injunctive relief.

583. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Verizon Media LLC And Verizon Communications, Inc.

584. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 136-142, and 221-259, inclusive, as it is fully stated herein.

585. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

586. The Defendant's defamatory statements were not privileged.

587. Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

71

588.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

589.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

590.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

591.   The false impression of the Plaintiff given in paragraphs 37-41, 136-142, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Verizon Media LLC And Verizon Communications, Inc.

592.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 136-142, and 221-259, inclusive, as it is fully stated herein.

593.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

594.   The defamatory statements described in paragraphs 37-41, 136-142, and 221-259 constitute outrageous conduct against the Plaintiff.

595.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

596.    A reasonable person in Plaintiff's position would consider Defendant's conduct as

outrageous.

597.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Verizon Media LLC And Verizon Communications, Inc.

598.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 136-142, and

221-259, inclusive, as it is fully stated herein.

599.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The published statements by the Defendant

portrayed the Plaintiff in a false light to the public.

600.    Defendant's defamatory statements were not privileged.

601.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

602.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

603.    The Defendant cannot and will not prove they reported on an official judicial

proceeding.

604.    This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

605. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

606. The Defendant has interfered with the Plaintiff's right to be left alone.

607. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

608. A reasonable person will find the Defendant's publication to be highly offensive.

609. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

610. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

611. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### Verizon Media LLC And Verizon Communications, Inc.

612. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

613. The Defendant failed to use reasonable care when publishing the defamatory statements.

614.   A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

615.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

616.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT I
### (Intentional Infliction of Emotional Distress)
### CBS Corporation

617.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 217-220, and 221-259, inclusive, as it is fully stated herein.

618.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

619.   The defamatory statements described in paragraphs 37-41, 217-220, and 221-259 constitute outrageous conduct against the Plaintiff.

620.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

621.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

622.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

relief.

## COUNT II
### (Invasion of Privacy – False Light)
### CBS Corporation

623.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 217-220, and

221-259, inclusive, as it is fully stated herein.

624.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The published statements by the Defendant

portrayed the Plaintiff in a false light to the public.

625.    Defendant's defamatory statements were not privileged.

626.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

627.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

628.    The Defendant cannot and will not prove they reported on an official judicial

proceeding.

629.    This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

630. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

631. The Defendant has interfered with the Plaintiff's right to be left alone.

632. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

633. A reasonable person will find the Defendant's publication to be highly offensive.

634. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

635. With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

636. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT III
### (Negligent Infliction of Emotional Distress)
### CBS Corporation

637. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

638. The Defendant failed to use reasonable care when publishing the defamatory statements.

639.   A reasonable publisher under similar circumstances would not have published the
defamatory statements in the article above.

640.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

641.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Tribune Publishing Company

642.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 94-98, and 221-
259, inclusive, as it is fully stated herein.

643.   The Defendant wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation.

644.   Defendant's defamatory statements were not privileged.

645.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

646.   Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

647.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

648.   This was the case where the articles published were a complete fabrication with no
official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

649.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

650.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

651.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

652.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT II
### (Defamation Per Se)
### Tribune Publishing Company

653.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 94-98, and 221-259 inclusive, as it is fully stated herein.

654.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

655.    The Defendant's defamatory statements were not privileged.

656.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

657.    The Defendant imputed multiple felonies to the Plaintiff.

658.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 94-98, and 221-259 as a result he is entitled to damages and

injunctive relief.

659.    A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Tribune Publishing Company

660.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 94-98, and 221-

259, inclusive, as it is fully stated herein.

661.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

662.    The Defendant's defamatory statements were not privileged.

663.    Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

664.    The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

665.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

666.    A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

667.    The false impression of the Plaintiff given in paragraphs 37-41, 94-98, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

### COUNT IV
### (Intentional Infliction of Emotional Distress)
### Tribune Publishing Company

668.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 94-98, and 221-

259, inclusive, as it is fully stated herein.

669. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

670. The defamatory statements described in paragraphs 37-41, 94-98, and 221-259 constitute outrageous conduct against the Plaintiff.

671. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

672. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

673. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Tribune Publishing Company

674. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 94-98, and 221-259, inclusive, as it is fully stated herein.

675. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

676. Defendant's defamatory statements were not privileged.

677.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

678.    Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

679.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

680.    This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

681.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

682.    The Defendant has interfered with the Plaintiff's right to be left alone.

683.    The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

684.    A reasonable person will find the Defendant's publication to be highly offensive.

685.    As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

686.    With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

687.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Tribune Publishing Company

688.    The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

689.    The Defendant failed to use reasonable care when publishing the defamatory statements.

690.    A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

691.    As a result of the Defendant's negligence, the Plaintiff has been severely injured.

692.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### News Corporation

693.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 104-109, and 221-259, inclusive, as it is fully stated herein.

694.    The Defendant wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The defamatory statements prove to be defamation.

695.    Defendant's defamatory statements were not privileged.

696.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

697.    Here, the evidence proves the Defendant's Articles are based wholly on unverified
        anonymous sources.

698.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

699.    This was the case where the articles published were a complete fabrication with no
        official statement by a government official in existence when the Defendant published the
        Articles, which proves that the Defendant knew the statements were false and purposefully
        avoided the truth.

700.    The evidence proves that the Defendant published the defamatory articles with no
        evidence of an official statement by a government official or official documentation, which
        proves the Defendant had a high degree of awareness of the falsity of the publications.

701.    With full knowledge of the absence of a verified official statement from a government
        official, or, official records, the Defendant knowingly, maliciously, and recklessly published
        defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
        disseminate the defamatory statements throughout the internet and the State of Florida.

702.    The Defendant had obvious reasons to doubt the veracity of the information reported
        because there was no evidence of official records or an official statement from a government
        official when the Defendant published the Articles.

703.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
        distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### News Corporation

704. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 104-109, and 221-259 inclusive, as it is fully stated herein.

705. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

706. The Defendant's defamatory statements were not privileged.

707. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

708. The Defendant imputed multiple felonies to the Plaintiff.

709. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 104-109, and 221-259 as a result he is entitled to damages and injunctive relief.

710. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### News Corporation

711.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 104-109, and

221-259, inclusive, as it is fully stated herein.

712.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

713.   The Defendant's defamatory statements were not privileged.

714.   Defamation by implication is an intentional tort recognized in Florida. See *Jews

for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory

implication by omitting facts.

715.   The Defendant maliciously published the false statements about the Plaintiff, and these

statements were defamatory in that they created false impressions of the Plaintiff.

716.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory

connection between them or, in the alternative, created a defamatory implication by omitting

facts when describing the nature and sequence of events.

717.    A reasonable person would understand the Defendant's statements to impart the false

innuendo, which would be highly offensive to a reasonable person.

718.    The false impression of the Plaintiff given in paragraphs 37-41, 104-109, and 221-259,

which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,

therefore, he is entitled to damages and injunctive relief.

## COUNT IV
## (Intentional Infliction of Emotional Distress)
## News Corporation

719.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 104-109, and

221-259, inclusive, as it is fully stated herein.

720.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,

recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

which they knew or should have known to be false.

721.    The defamatory statements described in paragraphs 37-41, 104-109, and 221-259

constitute outrageous conduct against the Plaintiff.

722.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless

disregard of the high probability of causing the Plaintiff to suffer emotional distress.

723.    A reasonable person in Plaintiff's position would consider Defendant's conduct as

outrageous.

724.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

relief.

## COUNT V
### (Invasion of Privacy – False Light)
### News Corporation

725.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 104-109, and

221-259, inclusive, as it is fully stated herein.

726.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The published statements by the Defendant

portrayed the Plaintiff in a false light to the public.

727.   Defendant's defamatory statements were not privileged.

728.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

729.   Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

730.   The Defendant cannot and will not prove they reported on an official judicial

proceeding.

731.   This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

732.   The evidence proves that the Defendant published the defamatory articles with no

evidence of an official statement by a government official or official documentation, which

proves the Defendant had a high degree of awareness of the falsity of the publications.

733.   The Defendant has interfered with the Plaintiff's right to be left alone.

734.    The Defendant disseminated statements to the public. Restatement (Second) of Torts §

652D comment a (1977).

735.    A reasonable person will find the Defendant's publication to be highly offensive.

736.    As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

737.    With full knowledge of the absence of a verified official statement from a government

official, or, official records, the Defendant knowingly, maliciously, and recklessly published

defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to

disseminate the defamatory statements throughout the Internet and the State of Florida.

738.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
## (Negligent Infliction of Emotional Distress)
## News Corporation

739.    The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

740.    The Defendant failed to use reasonable care when publishing the defamatory statements.

741.    A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

742.    As a result of the Defendant's negligence, the Plaintiff has been severely injured.

743.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Footballtalk LLC

744.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and

       221-259, inclusive, as it is fully stated herein.

745.   The Defendant wrongfully and with actual malice and gross negligence, caused to be

       published the statements set forth above. The defamatory statements prove to be defamation.

746.   Defendant's defamatory statements were not privileged.

747.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

748.   Here, the evidence proves the Defendant's Articles are based wholly on unverified

       anonymous sources.

749.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

750.   This was the case where the articles published were a complete fabrication with no

       official statement by a government official in existence when the Defendant published the

       Articles, which proves that the Defendant knew the statements were false and purposefully

       avoided the truth.

751.    The evidence proves that the Defendant published the defamatory articles with no
        evidence of an official statement by a government official or official documentation, which
        proves the Defendant had a high degree of awareness of the falsity of the publications.

752.    With full knowledge of the absence of a verified official statement from a government
        official, or, official records, the Defendant knowingly, maliciously, and recklessly published
        defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
        disseminate the defamatory statements throughout the internet and the State of Florida.

753.    The Defendant had obvious reasons to doubt the veracity of the information reported
        because there was no evidence of official records or an official statement from a government
        official when the Defendant published the Articles.

754.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
        distress, anguish, substantial damage to his well-being, overwhelming damage to his external
        reputation, and devastating damage to his family, personal, community, civic, and business
        relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
        and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
        Patterson, and he is entitled to damages and injunctive relief.

### COUNT II
### (Defamation Per Se)
### Footballtalk LLC

755.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and
        221-259 inclusive, as it is fully stated herein.

756.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

757.    The Defendant's defamatory statements were not privileged.

758.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

759.    The Defendant imputed multiple felonies to the Plaintiff.

760.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 143-158, and 221-259 as a result he is entitled to damages and injunctive relief.

761.    A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Footballtalk LLC

762.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and

221-259, inclusive, as it is fully stated herein.

763. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

764. The Defendant's defamatory statements were not privileged.

765. Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

766. The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

767. The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

768. A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

769. The false impression of the Plaintiff given in paragraphs 37-41, 143-158, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Footballtalk LLC

770. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and

221-259, inclusive, as it is fully stated herein.

771.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

772.    The defamatory statements described in paragraphs 37-41, 143-158, and 221-259 constitute outrageous conduct against the Plaintiff.

773.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

774.    A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

775.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

### COUNT V
### (Invasion of Privacy – False Light)
### Footballtalk LLC

776.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 143-158, and 221-259, inclusive, as it is fully stated herein.

777.    T Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

778.    Defendant's defamatory statements were not privileged.

779.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

780.    Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

781.    The Defendant cannot and will not prove they reported on an official judicial
proceeding.

782.    This was the case where the articles published were a complete fabrication with no
official statement by a government official in existence when the Defendant published the
Articles, which proves that the Defendant knew the statements were false and purposefully
avoided the truth.

783.    The evidence proves that the Defendant published the defamatory articles with no
evidence of an official statement by a government official or official documentation, which
proves the Defendant had a high degree of awareness of the falsity of the publications.

784.    The Defendant has interfered with the Plaintiff's right to be left alone.

785.    The Defendant disseminated statements to the public. Restatement (Second) of Torts §
652D comment a (1977).

786.    A reasonable person will find the Defendant's publication to be highly offensive.

787.    As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

788.    With full knowledge of the absence of a verified official statement from a government
official, or, official records, the Defendant knowingly, maliciously, and recklessly published
defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
disseminate the defamatory statements throughout the Internet and the State of Florida.

789.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Footballtalk LLC

790. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

791. The Defendant failed to use reasonable care when publishing the defamatory statements.

792. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

793. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

794. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### The Gannett Company

795. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and

97

221-259, inclusive, as it is fully stated herein.

796.    The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

797.    Defendant's defamatory statements were not privileged.

798.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

799.    Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

800.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

801.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

802.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

803.    With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

804.    The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

805.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### The Gannett Company

806.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and

221-259 inclusive, as it is fully stated herein.

807.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

808.    The Defendant's defamatory statements were not privileged.

809.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.


810.    The Defendant imputed multiple felonies to the Plaintiff.

811.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 110-116, and 221-259 as a result he is entitled to damages and injunctive relief.

812.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

### COUNT III
### (Defamation by Implication)
### The Gannett Company

813.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and 221-259, inclusive, as it is fully stated herein.

814.   Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

815.   The Defendant's defamatory statements were not privileged.

816.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

100

817.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

818.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

819.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

820.   The false impression of the Plaintiff given in paragraphs 37-41, 110-116, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### The Gannett Company

821.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and 221-259, inclusive, as it is fully stated herein.

822.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

823.   The defamatory statements described in paragraphs 37-41, 110-116, and 221-259 constitute outrageous conduct against the Plaintiff.

824.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

825. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

826. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
## (Invasion of Privacy – False Light)
## The Gannett Company

827. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and 221-259, inclusive, as it is fully stated herein.

828. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

829. Defendant's defamatory statements were not privileged.

830. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

831. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

832. The Defendant cannot and will not prove they reported on an official judicial proceeding.

833. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

102

834. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

835. The Defendant has interfered with the Plaintiff's right to be left alone.

836. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

837. A reasonable person will find the Defendant's publication to be highly offensive.

838. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

839. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

840. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### The Gannett Company

841. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

842. The Defendant failed to use reasonable care when publishing the defamatory statements.

843.  A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

844.  As a result of the Defendant's negligence, the Plaintiff has been severely injured.

845.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
## (General Defamation)
## BH Media Group, Inc.

846.  The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 161-171, and 221-259 inclusive, as it is fully stated herein.

847.  The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

848.  Defendant's defamatory statements were not privileged.

849.  Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

850.  Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

851.  The Defendant cannot and will not prove they reported on an official judicial proceeding.

852.  This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully
avoided the truth.

853.    The evidence proves that the Defendant published the defamatory articles with no
evidence of an official statement by a government official or official documentation, which
proves the Defendant had a high degree of awareness of the falsity of the publications.

854.    With full knowledge of the absence of a verified official statement from a government
official, or, official records, the Defendant knowingly, maliciously, and recklessly published
defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
disseminate the defamatory statements throughout the internet and the State of Florida.

855.    The Defendant had obvious reasons to doubt the veracity of the information reported
because there was no evidence of official records or an official statement from a government
official when the Defendant published the Articles.

856.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his well-being, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

### COUNT II
### (Defamation Per Se)
### BH Media Group, Inc.

857.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 161-171, and
221-259 inclusive, as it is fully stated herein.

858.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be
       published the statements set forth above. The defamatory statements prove to be defamation
       *per se.*

859.   The Defendant's defamatory statements were not privileged.

860.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

861.   The Defendant imputed multiple felonies to the Plaintiff.

862.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
       distress, anguish, substantial damage to his well-being, overwhelming damage to his external
       reputation, and devastating damage to his family, personal, community, civic, and business
       relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
       and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
       Patterson in paragraphs 37-41, 161-171, and 221-259 as a result he is entitled to damages and
       injunctive relief.

863.   A statement is defamatory per se, recognized and deeply rooted in Florida law,
       when statements are so powerful in their ability to hurt someone that the law presumes harm
       as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law
       presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592
       (1906), where the words are ". . . of such common notoriety established by the general
       consent of men, that the courts must of necessity take judicial notice of its harmful effect.
       Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT III**
**(Defamation by Implication)**
**BH Media Group, Inc.**

864.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 161-171, and
        221-259, inclusive, as it is fully stated herein.

865.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The defamatory statements prove to be defamation
        by implication.

866.    The Defendant's defamatory statements were not privileged.

867.    Defamation by implication is an intentional tort recognized in Florida. See *Jews
        for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of
        character that happens from what is implied when a defendant (1) juxtaposes a series of facts
        so as to imply a defamatory connection between them; or (2) creates a defamatory
        implication by omitting facts.

868.    The Defendant maliciously published the false statements about the Plaintiff, and these
        statements were defamatory in that they created false impressions of the Plaintiff.

869.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory
        connection between them or, in the alternative, created a defamatory implication by omitting
        facts when describing the nature and sequence of events.

870.    A reasonable person would understand the Defendant's statements to impart the false
        innuendo, which would be highly offensive to a reasonable person.

871.    The false impression of the Plaintiff given in paragraphs 37-41, 161-171, and 221-259,
        which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,
        therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### BH Media Group, Inc.

872.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 161-171, and
       221-259, inclusive, as it is fully stated herein.

873.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,
       recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,
       which they knew or should have known to be false.

874.   The defamatory statements described in paragraphs 37-41, 161-171, and 221-259
       constitute outrageous conduct against the Plaintiff.

875.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
       alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
       disregard of the high probability of causing the Plaintiff to suffer emotional distress.

876.   A reasonable person in Plaintiff's position would consider Defendant's conduct as
       outrageous.

877.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
       Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and
       proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive
       relief.

## COUNT V
## (Invasion of Privacy – False Light)
## BH Media Group, Inc.

878.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 161-171, and
       221-259, inclusive, as it is fully stated herein.

879.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be
       published the statements set forth above. The published statements by the Defendant
       portrayed the Plaintiff in a false light to the public.

880.    Defendant's defamatory statements were not privileged.

881.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

882.    Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

883.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

884.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

885.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

886.    The Defendant has interfered with the Plaintiff's right to be left alone.

887.    The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

888.    A reasonable person will find the Defendant's publication to be highly offensive.

889.    As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

890.    With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

891.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### BH Media Group, Inc.

892.   The Defendant was negligent when publishing defamatory statements in the article

       above, which inflicted emotional distress on the Plaintiff.

893.   The Defendant failed to use reasonable care when publishing the defamatory statements.

894.   A reasonable publisher under similar circumstances would not have published the

       defamatory statements in the article above.

895.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

896.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

       distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

       reputation, and devastating damage to his family, personal, community, civic, and business

       relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

       and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

       Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### VOX Media, Inc.

897.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 159-160, and

221-259, inclusive, as it is fully stated herein.

898.    The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

899.    Defendant's defamatory statements were not privileged.

900.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

901.    Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

902.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

903.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

904.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

905.    With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

906.    The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

111

907.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## VOX Media, Inc.

908.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 159-160, and

221-259 inclusive, as it is fully stated herein.

909.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

910.    The Defendant's defamatory statements were not privileged.

911.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

912.    The Defendant imputed multiple felonies to the Plaintiff.

913.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 161-171, and 221-259 as a result he is entitled to damages and

injunctive relief.

914.    A statement is defamatory per se, recognized and deeply rooted in Florida law,

    when statements are so powerful in their ability to hurt someone that the law presumes harm

    as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

    presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

    (1906), where the words are ". . . of such common notoriety established by the general

    consent of men, that the courts must of necessity take judicial notice of its harmful effect.

    Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### VOX Media, Inc.

915.    The Plaintiff re-alleges each and every allegation in paragraphs, inclusive, as it is fully

    stated herein.

916.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

    published the statements set forth above. The defamatory statements prove to be defamation

    by implication.

917.    The Defendant's defamatory statements were not privileged.

918.    Defamation by implication is an intentional tort recognized in Florida. See *Jews*

    *for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

    character that happens from what is implied when a defendant (1) juxtaposes a series of facts

    so as to imply a defamatory connection between them; or (2) creates a defamatory

    implication by omitting facts.

919.    The Defendant maliciously published the false statements about the Plaintiff, and these

    statements were defamatory in that they created false impressions of the Plaintiff.

920.     The Defendant severely juxtaposed a series of facts so as to imply a defamatory

         connection between them or, in the alternative, created a defamatory implication by omitting

         facts when describing the nature and sequence of events.

921.     A reasonable person would understand the Defendant's statements to impart the false

         innuendo, which would be highly offensive to a reasonable person.

922.     The false impression of the Plaintiff given in paragraphs 37-41, 159-160, and 221-259,

         which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,

         therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### VOX Media, Inc.

923.     The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 159-160, and

         221-259, inclusive, as it is fully stated herein.

924.     The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,

         recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

         which they knew or should have known to be false.

925.     The defamatory statements described in paragraphs 37-41, 159-160, and 221-259

         constitute outrageous conduct against the Plaintiff.

926.     The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

         alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless

         disregard of the high probability of causing the Plaintiff to suffer emotional distress.

927.    A reasonable person in Plaintiff's position would consider Defendant's conduct as

        outrageous.

928.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

        Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

        proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

        relief.

## COUNT V
### (Invasion of Privacy – False Light)
### VOX Media, Inc.

929.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 159-160, and

        221-259, inclusive, as it is fully stated herein.

930.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

        published the statements set forth above. The published statements by the Defendant

        portrayed the Plaintiff in a false light to the public.

931.    Defendant's defamatory statements were not privileged.

932.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

933.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

        anonymous sources.

934.    The Defendant cannot and will not prove they reported on an official judicial

        proceeding.

935.    This was the case where the articles published were a complete fabrication with no

        official statement by a government official in existence when the Defendant published the

        Articles, which proves that the Defendant knew the statements were false and purposefully

        avoided the truth.

115

936. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

937. The Defendant has interfered with the Plaintiff's right to be left alone.

938. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

939. A reasonable person will find the Defendant's publication to be highly offensive.

940. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

941. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

942. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
## (Negligent Infliction of Emotional Distress)
## VOX Media, Inc.

943. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

944. The Defendant failed to use reasonable care when publishing the defamatory statements.

945.   A reasonable publisher under similar circumstances would not have published the
defamatory statements in the article above.

946.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

947.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### The Daily Caller, Inc.

948.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 172-177, and
221-259, inclusive, as it is fully stated herein.

949.   The Defendant wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation.

950.   Defendant's defamatory statements were not privileged.

951.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

952.   Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

953.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

954.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

955.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

956.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

957.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

958.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### The Daily Caller, Inc.

959.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 172-177, and

118

221-259 inclusive, as it is fully stated herein.

960.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

961.   The Defendant's defamatory statements were not privileged.

962.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

963.   The Defendant imputed multiple felonies to the Plaintiff.

964.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 172-177, and 221-259 as a result he is entitled to damages and injunctive relief.

965.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT III**
**(Defamation by Implication)**
**The Daily Caller, Inc.**

119

966. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 172-177, and 221-259, inclusive, as it is fully stated herein.

967. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

968. The Defendant's defamatory statements were not privileged.

969. Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

970. The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

971. The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

972. A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

973. The false impression of the Plaintiff given in paragraphs 37-41, 172-177, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

**The Daily Caller, Inc.**

974. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 172-177, and 221-259, inclusive, as it is fully stated herein.

975. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

976. The defamatory statements described in paragraphs 22-42 constitute outrageous conduct against the Plaintiff.

977. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

978. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

979. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### The Daily Caller, Inc.

980. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 172-177, and 221-259, inclusive, as it is fully stated herein.

981. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

982. Defendant's defamatory statements were not privileged.

983. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

984. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

985. The Defendant cannot and will not prove they reported on an official judicial proceeding.

986. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

987. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

988. The Defendant has interfered with the Plaintiff's right to be left alone.

989. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

990. A reasonable person will find the Defendant's publication to be highly offensive.

991. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

992. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

993. Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### The Daily Caller, Inc.

994.   The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

995.   The Defendant failed to use reasonable care when publishing the defamatory statements.

996.   A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

997.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

998.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT 1
### (General Defamation)
### Cox Media Group

999.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 178-183, and

221-259, inclusive, as it is fully stated herein.

1000.   The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

1001.   Defendant's defamatory statements were not privileged.

1002.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1003.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1004.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1005.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1006.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1007.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1008.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1009.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## Cox Media Group

1010.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 178-183, and

221-259 inclusive, as it is fully stated herein.

1011.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

1012.   The Defendant's defamatory statements were not privileged.

1013.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1014.   The Defendant imputed multiple felonies to the Plaintiff.

1015.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 178-183, and 221-259 as a result he is entitled to damages and

injunctive relief.

1016.   A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Cox Media Group

1017.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 178-183, and

221-259, inclusive, as it is fully stated herein.

1018.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

1019.   The Defendant's defamatory statements were not privileged.

1020.   Defamation by implication is an intentional tort recognized in Florida. See *Jews

for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory

implication by omitting facts.

1021.   The Defendant maliciously published the false statements about the Plaintiff, and these

statements were defamatory in that they created false impressions of the Plaintiff.

1022.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory

connection between them or, in the alternative, created a defamatory implication by omitting

facts when describing the nature and sequence of events.

1023.   A reasonable person would understand the Defendant's statements to impart the false

innuendo, which would be highly offensive to a reasonable person.

1024.   The false impression of the Plaintiff given in paragraphs 37-41, 178-183, and 221-259,

which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,

therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Cox Media Group

1025.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 178-183, and

221-259, inclusive, as it is fully stated herein.

1026.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,

recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

which they knew or should have known to be false.

1027.   The defamatory statements described in paragraphs 37-41, 178-183, and 221-259

constitute outrageous conduct against the Plaintiff.

1028.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless

disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1029.   A reasonable person in Plaintiff's position would consider Defendant's conduct as

outrageous.

1030.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

relief.

### COUNT V
### (Invasion of Privacy – False Light)
### Cox Media Group

1031.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 178-183, and

221-259, inclusive, as it is fully stated herein.

1032.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The published statements by the Defendant

portrayed the Plaintiff in a false light to the public.

1033.   Defendant's defamatory statements were not privileged.

1034.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1035.   Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

1036.   The Defendant cannot and will not prove they reported on an official judicial

proceeding.

1037.   This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

1038. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1039. The Defendant has interfered with the Plaintiff's right to be left alone.

1040. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1041. A reasonable person will find the Defendant's publication to be highly offensive.

1042. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1043. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1044. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### Cox Media Group

1045. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1046. The Defendant failed to use reasonable care when publishing the defamatory statements.

1047.   A reasonable publisher under similar circumstances would not have published the
defamatory statements in the article above.

1048.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1049.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

### COUNT 1
### (General Defamation)
### IBT Media, Inc.

1050.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and
221-259, inclusive, as it is fully stated herein.

1051.   The Defendant wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation.

1052.   Defendant's defamatory statements were not privileged.

1053.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1054.   Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

1055.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

130

1056.  This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1057.  The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1058.  With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1059.  The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1060.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT II
### (Defamation Per Se)
### IBT Media, Inc.

1061.  The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and

221-259 inclusive, as it is fully stated herein.

1062.  The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

1063.  The Defendant's defamatory statements were not privileged.

1064.  Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1065.  The Defendant imputed multiple felonies to the Plaintiff.

1066.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 184-191, and 221-259 as a result he is entitled to damages and injunctive relief.

1067.  A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT III**
**(Defamation by Implication)**
**IBT Media, Inc.**

1068.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and
        221-259, inclusive, as it is fully stated herein.

1069.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The defamatory statements prove to be defamation
        by implication.

1070.   The Defendant's defamatory statements were not privileged.

1071.   Defamation by implication is an intentional tort recognized in Florida. See *Jews
        for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of
        character that happens from what is implied when a defendant (1) juxtaposes a series of facts
        so as to imply a defamatory connection between them; or (2) creates a defamatory
        implication by omitting facts.

1072.   The Defendant maliciously published the false statements about the Plaintiff, and these
        statements were defamatory in that they created false impressions of the Plaintiff.

1073.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory
        connection between them or, in the alternative, created a defamatory implication by omitting
        facts when describing the nature and sequence of events.

1074.   A reasonable person would understand the Defendant's statements to impart the false
        innuendo, which would be highly offensive to a reasonable person.

1075.   The false impression of the Plaintiff given in paragraphs 37-41, 184-191, and 221-259,
        which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,
        therefore, he is entitled to damages and injunctive relief.

### COUNT IV
### (Intentional Infliction of Emotional Distress)

**IBT Media, Inc.**

1076.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and
221-259, inclusive, as it is fully stated herein.

1077.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,
recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,
which they knew or should have known to be false.

1078.   The defamatory statements described in paragraphs 37-41, 184-191, and 221-259
constitute outrageous conduct against the Plaintiff.

1079.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1080.   A reasonable person in Plaintiff's position would consider Defendant's conduct as
outrageous.

1081.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and
proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive
relief.

### COUNT V
### (Invasion of Privacy – False Light)
### IBT Media, Inc.

1082.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and
221-259, inclusive, as it is fully stated herein.

1083.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The published statements by the Defendant
portrayed the Plaintiff in a false light to the public.

1084.   Defendant's defamatory statements were not privileged.

1085.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1086.   Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u>
anonymous sources.

1087.   The Defendant cannot and will not prove they reported on an official judicial
proceeding.

1088.   This was the case where the articles published were a complete fabrication with no
<u>official statement by a government official</u> in existence when the Defendant published the
Articles, which proves that the Defendant knew the statements were false and purposefully
avoided the truth.

1089.   The evidence proves that the Defendant published the defamatory articles with no
evidence of an official statement by a government official or official documentation, which
proves the Defendant had a high degree of awareness of the falsity of the publications.

1090.   The Defendant has interfered with the Plaintiff's right to be left alone.

1091.   The Defendant disseminated statements to the public. Restatement (Second) of Torts §
652D comment a (1977).

1092.   A reasonable person will find the Defendant's publication to be highly offensive.

1093.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1094.   With full knowledge of the absence of a <u>verified official statement</u> from a government
official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published
defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
disseminate the defamatory statements throughout the Internet and the State of Florida.

1095.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
## (Negligent Infliction of Emotional Distress)
## IBT Media, Inc.

1096.   The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

1097.   The Defendant failed to use reasonable care when publishing the defamatory statements.

1098.   A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

1099.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1100.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
## (General Defamation)
## Newsweek Media Group, Inc.

1101.     The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and

221-259, inclusive, as it is fully stated herein.

1102.   The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

1103.   Defendant's defamatory statements were not privileged.

1104.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1105.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1106.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1107.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1108.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1109.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1110.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1111.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his well-being, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## Newsweek Media Group, Inc.

1112.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and
221-259 inclusive, as it is fully stated herein.

1113.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation
*per se.*

1114.    The Defendant's defamatory statements were not privileged.

1115.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1116.    The Defendant imputed multiple felonies to the Plaintiff.

1117.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his well-being, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 184-191, and 221-259 as a result he is entitled to damages and injunctive relief.

1118.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Newsweek Media Group, Inc.

1119.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and 221-259, inclusive, as it is fully stated herein.

1120.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

1121.   The Defendant's defamatory statements were not privileged.

1122.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

1123.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

1124.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1125.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

1126.   The false impression of the Plaintiff given in paragraphs 37-41, 184-191, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Newsweek Media Group, Inc.

1127.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and 221-259, inclusive, as it is fully stated herein.

1128.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

1129.   The defamatory statements described in paragraphs 37-41, 184-191, and 221-259 constitute outrageous conduct against the Plaintiff.

1130.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1131.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1132.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
## (Invasion of Privacy – False Light)
## Newsweek Media Group, Inc.

1133.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 184-191, and 221-259, inclusive, as it is fully stated herein.

1134.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1135.   Defendant's defamatory statements were not privileged.

1136.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1137.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1138.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1139.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1140.  The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1141.  The Defendant has interfered with the Plaintiff's right to be left alone.

1142.  The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1143.  A reasonable person will find the Defendant's publication to be highly offensive.

1144.  As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1145.  With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1146.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### Newsweek Media Group, Inc.

1147.  The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1148. The Defendant failed to use reasonable care when publishing the defamatory statements.

1149. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1150. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1151. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### ESPN, Inc.

1152. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 194-211, and 221-259, inclusive, as it is fully stated herein.

1153. The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

1154. Defendant's defamatory statements were not privileged.

1155. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1156. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1157. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1158. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1159. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1160. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1161. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1162.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### ESPN, Inc.

1163.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 194-211, and

221-259, 38-39 & 41 inclusive, as it is fully stated herein.

1164. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

1165. The Defendant's defamatory statements were not privileged.

1166. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1167. The Defendant imputed multiple felonies to the Plaintiff.

1168. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 194-211, and 221-259 as a result he is entitled to damages and injunctive relief.

1169. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT III**
**(Defamation by Implication)**
**ESPN, Inc.**

1170.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 194-211, and 221-259, inclusive, as it is fully stated herein.

1171.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

1172.   The Defendant's defamatory statements were not privileged.

1173.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

1174.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

1175.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1176.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

1177.   The false impression of the Plaintiff given in paragraphs 37-41, 194-211, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
## (Intentional Infliction of Emotional Distress)
## ESPN, Inc.

1178.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 194-211, and

   221-259, inclusive, as it is fully stated herein.

1179.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,

   recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

   which they knew or should have known to be false.

1180.   The defamatory statements described in paragraphs 37-41, 194-211, and 221-259

   constitute outrageous conduct against the Plaintiff.

1181.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

   alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless

   disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1182.   A reasonable person in Plaintiff's position would consider Defendant's conduct as

   outrageous.

1183.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

   Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and

   proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive

   relief.

## COUNT V
## (Invasion of Privacy – False Light)
## ESPN, Inc.

1184.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 194-211, and

   221-259, inclusive, as it is fully stated herein.

1185.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1186.   Defendant's defamatory statements were not privileged.

1187.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1188.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1189.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1190.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1191.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1192.   The Defendant has interfered with the Plaintiff's right to be left alone.

1193.   The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1194.   A reasonable person will find the Defendant's publication to be highly offensive.

1195.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1196.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published

148

defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1197.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### ESPN, Inc.

1198.  The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1199.  The Defendant failed to use reasonable care when publishing the defamatory statements.

1200.  A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1201.  As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1202.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### New Media Investment Group, Inc.

1203.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and

221-259, inclusive, as it is fully stated herein.

1204.   The Defendant wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation.

1205.   Defendant's defamatory statements were not privileged.

1206.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1207.   Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

1208.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1209.   This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

1210.   The evidence proves that the Defendant published the defamatory articles with no

evidence of an official statement by a government official or official documentation, which

proves the Defendant had a high degree of awareness of the falsity of the publications.

1211.   With full knowledge of the absence of a verified official statement from a government

official, or, official records, the Defendant knowingly, maliciously, and recklessly published

defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to

disseminate the defamatory statements throughout the internet and the State of Florida.

150

1212.  The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1213.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
## (Defamation Per Se)
## New Media Investment Group, Inc.

1214.  The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and 221-259 inclusive, as it is fully stated herein.

1215.  The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

1216.  The Defendant's defamatory statements were not privileged.

1217.  Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1218.  The Defendant imputed multiple felonies to the Plaintiff.

1219.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 110-116, and 221-259 as a result he is entitled to damages and

injunctive relief.

1220.   A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### New Media Investment Group, Inc.

1221.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and

221-259, inclusive, as it is fully stated herein.

1222.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

1223.   The Defendant's defamatory statements were not privileged.


1224.   Defamation by implication is an intentional tort recognized in Florida. See *Jews*

*for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory
implication by omitting facts.

1225. The Defendant maliciously published the false statements about the Plaintiff, and these
statements were defamatory in that they created false impressions of the Plaintiff.

1226. The Defendant severely juxtaposed a series of facts so as to imply a defamatory
connection between them or, in the alternative, created a defamatory implication by omitting
facts when describing the nature and sequence of events.

1227. A reasonable person would understand the Defendant's statements to impart the false
innuendo, which would be highly offensive to a reasonable person.

1228. The false impression of the Plaintiff given in paragraphs 37-41, 110-116, and 221-259,
which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,
therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### New Media Investment Group, Inc.

1229. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and
221-259, inclusive, as it is fully stated herein.

1230. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,
recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,
which they knew or should have known to be false.


1231. The defamatory statements described in paragraphs 37-41, 110-116, and 221-259
constitute outrageous conduct against the Plaintiff.

1232. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the

alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1233.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1234.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

### COUNT V
### (Invasion of Privacy – False Light)
### New Media Investment Group, Inc.

1235.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 110-116, and 221-259, inclusive, as it is fully stated herein.

1236.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1237.   Defendant's defamatory statements were not privileged.

1238.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1239.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1240.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1241.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1242. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1243. The Defendant has interfered with the Plaintiff's right to be left alone.

1244. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1245. A reasonable person will find the Defendant's publication to be highly offensive.

1246. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1247. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1248. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT VI**
**(Negligent Infliction of Emotional Distress)**
**New Media Investment Group, Inc.**

1249. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1250. The Defendant failed to use reasonable care when publishing the defamatory statements.

1251. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1252. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1253. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Gatehouse Media Management Services, Inc.

1254. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and 221-259, inclusive, as it is fully stated herein.

1255. The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

1256. Defendant's defamatory statements were not privileged.

1257. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1258. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1259. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1260. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1261. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1262. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1263. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1264. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT II**
**(Defamation Per Se)**
**Gatehouse Media Management Services, Inc.**

1265.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and 221-259 inclusive, as it is fully stated herein.

1266.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

1267.   The Defendant's defamatory statements were not privileged

1268.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages

1269.   The Defendant imputed multiple felonies to the Plaintiff.

1270.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 212-216, and 221-259 as a result he is entitled to damages and injunctive relief.

1271.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

### COUNT III
### (Defamation by Implication)

### Gatehouse Media Management Services, Inc.

1272.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and 221-259, inclusive, as it is fully stated herein.

1273.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

1274.   The Defendant's defamatory statements were not privileged.

1275.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

1276.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

1277.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1278.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

1279.   The false impression of the Plaintiff given in paragraphs 37-41, 212-216, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

### COUNT IV
### (Intentional Infliction of Emotional Distress)

**Gatehouse Media Management Services, Inc.**

1280.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and
221-259, inclusive, as it is fully stated herein.

1281.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,
recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,
which they knew or should have known to be false.

1282.    The defamatory statements described in paragraphs 22-42 constitute outrageous conduct
against the Plaintiff.

1283.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1284.    A reasonable person in Plaintiff's position would consider Defendant's conduct as
outrageous.

1285.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and
proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive
relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Gatehouse Media Management Services, Inc.

1286.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and
221-259, inclusive, as it is fully stated herein.

1287.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The published statements by the Defendant
portrayed the Plaintiff in a false light to the public.

1288.   Defendant's defamatory statements were not privileged.

1289.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1290.   Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

1291.   The Defendant cannot and will not prove they reported on an official judicial
proceeding.

1292.   This was the case where the articles published were a complete fabrication with no
official statement by a government official in existence when the Defendant published the
Articles, which proves that the Defendant knew the statements were false and purposefully
avoided the truth.

1293.   The evidence proves that the Defendant published the defamatory articles with no
evidence of an official statement by a government official or official documentation, which
proves the Defendant had a high degree of awareness of the falsity of the publications.

1294.   The Defendant has interfered with the Plaintiff's right to be left alone.

1295.   The Defendant disseminated statements to the public. Restatement (Second) of Torts §
652D comment a (1977).

1296.   A reasonable person will find the Defendant's publication to be highly offensive.

1297.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1298.   With full knowledge of the absence of a verified official statement from a government
official, or, official records, the Defendant knowingly, maliciously, and recklessly published
defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
disseminate the defamatory statements throughout the Internet and the State of Florida.

1299.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### Gatehouse Media Management Services, Inc.

1300.   The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

1301.   The Defendant failed to use reasonable care when publishing the defamatory statements.

1302.   A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

1303.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1304.   Dimitri Patterson has suffered severe injuries in the form of  internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Gatehouse Media Florida Holdings, Inc.

1305.     The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and

221-259, inclusive, as it is fully stated herein.

1306.   The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

1307.   Defendant's defamatory statements were not privileged.

1308.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1309.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1310.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1311.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1312.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1313.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1314.   The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1315.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

### COUNT II
### (Defamation Per Se)
### Gatehouse Media Florida Holdings, Inc.

1316.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and

221-259 inclusive, as it is fully stated herein.

1317.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

1318.   The Defendant's defamatory statements were not privileged.

1319.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1320.   The Defendant imputed multiple felonies to the Plaintiff.

1321.   Dimitri Patterson has suffered severe injuries in the form of  internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 212-216, and 221-259 as a result he is entitled to damages and

injunctive relief.

1322.   A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
## (Defamation by Implication)
## Gatehouse Media Florida Holdings, Inc.

1323.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and

221-259, inclusive, as it is fully stated herein.

1324.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

by implication.

1325.   The Defendant's defamatory statements were not privileged.

1326.   Defamation by implication is an intentional tort recognized in Florida. See *Jews

for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of

character that happens from what is implied when a defendant (1) juxtaposes a series of facts

so as to imply a defamatory connection between them; or (2) creates a defamatory

implication by omitting facts.

1327.   The Defendant maliciously published the false statements about the Plaintiff, and these

statements were defamatory in that they created false impressions of the Plaintiff.

1328.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory

165

connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1329.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

1330.   The false impression of the Plaintiff given in paragraphs 37-41, 212-216, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Gatehouse Media Florida Holdings, Inc.

1331.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and 221-259, inclusive, as it is fully stated herein.

1332.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

1333.   The defamatory statements described in paragraphs 37-41, 212-216, and 221-259 constitute outrageous conduct against the Plaintiff.

1334.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1335.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1336.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the

Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
## (Invasion of Privacy – False Light)
## Gatehouse Media Florida Holdings, Inc.

1337. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 212-216, and 221-259, inclusive, as it is fully stated herein.

1338. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1339. Defendant's defamatory statements were not privileged.

1340. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1341. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1342. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1343. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1344. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

167

1345.  The Defendant has interfered with the Plaintiff's right to be left alone.

1346.  The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1347.  A reasonable person will find the Defendant's publication to be highly offensive.

1348.  As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1349.  With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1350.  Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT VI
### (Negligent Infliction of Emotional Distress)
### Gatehouse Media Florida Holdings, Inc.

1351.  The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1352.  The Defendant failed to use reasonable care when publishing the defamatory statements.

1353.  A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1354.  As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1355. Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

**COUNT 1**
**(General Defamation)**
**Microsoft Corporation And MSN.Com**

1356.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 192-193, and

221-259, inclusive, as it is fully stated herein.

1357.    The Defendant wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

1358.    Defendant's defamatory statements were not privileged.

1359.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1360.    Here, the evidence proves the Defendant's Articles are based wholly on unverified

anonymous sources.

1361.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

1362.    This was the case where the articles published were a complete fabrication with no

official statement by a government official in existence when the Defendant published the

Articles, which proves that the Defendant knew the statements were false and purposefully

avoided the truth.

1363. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1364. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1365. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1366. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### Microsoft Corporation And MSN.Com

1367. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 192-193, and 221-259 inclusive, as it is fully stated herein.

1368.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se*.

1369.   The Defendant's defamatory statements were not privileged.

1370.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1371.   The Defendant imputed multiple felonies to the Plaintiff.

1372.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 192-193, and 221-259 as a result he is entitled to damages and injunctive relief.

1373.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Microsoft Corporation And MSN.Com

1374.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 192-193, and

221-259, inclusive, as it is fully stated herein.

1375.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

1376.   The Defendant's defamatory statements were not privileged.

1377.   Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

1378.   The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

1379.   The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1380.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

1381.   The false impression of the Plaintiff given in paragraphs 37-41, 192-193, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Microsoft Corporation And MSN.Com

1382.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 192-193, and

221-259, inclusive, as it is fully stated herein.

1383.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

1384.   The defamatory statements described in paragraphs 37-41, 192-193, and 221-259 constitute outrageous conduct against the Plaintiff.

1385.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1386.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1387.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT V
### (Invasion of Privacy – False Light)
### Microsoft Corporation And MSN.Com

1388.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 192-193, and 221-259, inclusive, as it is fully stated herein.

1389.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1390.   Defendant's defamatory statements were not privileged.

1391. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1392. Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

1393. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1394. This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1395. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1396. The Defendant has interfered with the Plaintiff's right to be left alone.

1397. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1398. A reasonable person will find the Defendant's publication to be highly offensive.

1399. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1400. With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1401. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT VI**
**(Negligent Infliction of Emotional Distress)**
**Microsoft Corporation And MSN.Com**

1402. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1403. The Defendant failed to use reasonable care when publishing the defamatory statements.

1404. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1405. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1406. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT I**
**(Intentional Infliction of Emotional Distress)**
**Jasmine Brand**

1407. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 59-64, and 221-259, inclusive, as it is fully stated herein.

175

1408.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

1409.   The defamatory statements described in paragraphs 37-41, 59-64, and 221-259 constitute outrageous conduct against the Plaintiff.

1410.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1411.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1412.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

### COUNT II
### (Invasion of Privacy – False Light)
### Jasmine Brand

1413.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 59-64, and 221-259, inclusive, as it is fully stated herein.

1414.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1415.   Defendant's defamatory statements were not privileged.

1416.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1417.   Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1418.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

1419.   This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1420.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1421.   The Defendant has interfered with the Plaintiff's right to be left alone.

1422.   The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1423.   A reasonable person will find the Defendant's publication to be highly offensive.

1424.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1425.   With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1426.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

177

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT III
### (Negligent Infliction of Emotional Distress)
### Jasmine Brand

1427. The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

1428. The Defendant failed to use reasonable care when publishing the defamatory statements.

1429. A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

1430. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1431. Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT I
### (Intentional Infliction of Emotional Distress)
### Mahir Fadle

1432. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 59-64, and 221-

259, inclusive, as it is fully stated herein.

1433. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

1434. The defamatory statements described in paragraphs 37-41, 59-64, and 221-259 constitute outrageous conduct against the Plaintiff.

1435. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1436. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1437. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT II
### (Invasion of Privacy - False Light)
#### Mahir Fadle

1438. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 59-64, and 221-259, inclusive, as it is fully stated herein.

1439. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

1440. Defendant's defamatory statements were not privileged.

1441. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1442. Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

1443. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1444. This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1445. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1446. The Defendant has interfered with the Plaintiff's right to be left alone.

1447. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1448. A reasonable person will find the Defendant's publication to be highly offensive.

1449. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1450. With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1451. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT III
### (Negligent Infliction of Emotional Distress)
### Mahir Fadle

1452. The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

1453. The Defendant failed to use reasonable care when publishing the defamatory statements.

1454. A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

1455. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1456. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT I
### (Intentional Infliction of Emotional Distress)
### Robert Littal

1457. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 65-67, and 221-259, inclusive, as it is fully stated herein.

1458. The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

181

which they knew or should have known to be false.

1459.   The defamatory statements described in paragraphs 37-41, 65-67, and 221-259 constitute
        outrageous conduct against the Plaintiff.

1460.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
        alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
        disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1461.   A reasonable person in Plaintiff's position would consider Defendant's conduct as
        outrageous.

1462.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
        Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and
        proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive
        relief.

### COUNT II
### (Invasion of Privacy – False Light)
### Robert Littal

1463.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 65-67, and 221-
        259, inclusive, as it is fully stated herein.

1464.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be
        published the statements set forth above. The published statements by the Defendant
        portrayed the Plaintiff in a false light to the public.

1465.   Defendant's defamatory statements were not privileged.

1466.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1467.   Here, the evidence proves the Defendant's Articles are based wholly on unverified
        anonymous sources.

1468. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1469. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1470. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1471. The Defendant has interfered with the Plaintiff's right to be left alone.

1472. The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

1473. A reasonable person will find the Defendant's publication to be highly offensive.

1474. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1475. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

1476. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT III
### (Negligent Infliction of Emotional Distress)
### Robert Littal

1477.   The Defendant was negligent when publishing defamatory statements in the article

above, which inflicted emotional distress on the Plaintiff.

1478.   The Defendant failed to use reasonable care when publishing the defamatory statements.

1479.   A reasonable publisher under similar circumstances would not have published the

defamatory statements in the article above.

1480.   As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1481.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson, and he is entitled to damages and injunctive relief.

## COUNT I
### (Intentional Infliction of Emotional Distress)
### Miami Herald Media Company

1482.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 43-58, and 221-

259, inclusive, as it is fully stated herein.

1483.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully,

recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff,

which they knew or should have known to be false.

1484. The defamatory statements described in paragraphs 37-41, 43-58, and 221-259 constitute outrageous conduct against the Plaintiff.

1485. The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

1486. A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

1487. The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

## COUNT II
### (Invasion of Privacy – Appropriation of Name and Likeness)
### Miami Herald Media Company

1488. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 43-58, and 221-259 inclusive, as it is fully stated herein.

1489. The Plaintiff is an ex-NFL Veteran and a public figure, which adds value to his name and likeness.

1490. The Plaintiff is the exclusive rights Owner of his name and likeness.

1491. The Defendant published defamatory and infringing statements and photos of the Plaintiff without his consent.

1492. Here, the evidence proves the Defendant's Articles are based wholly on unverified anonymous sources.

1493. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1494. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1495. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1496. The Defendant has interfered with the Plaintiff's right to be left alone.

1497. The Defendant disseminated statements to the public.

1498. A reasonable person will find the Defendant's publication to be highly offensive.

1499. As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

1500. The Defendant published the infringing articles and photos about the Plaintiff to increase traffic to their Website, which proves to be a direct benefit from the misappropriation of the Plaintiff's name.

1501. Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT III**
**(Negligent Infliction of Emotional Distress)**
**Miami Herald Media Company**

1502. The Defendant was negligent when publishing defamatory statements in the article
above, which inflicted emotional distress on the Plaintiff.

1503. The Defendant failed to use reasonable care when publishing the defamatory statements.

1504. A reasonable publisher under similar circumstances would not have published the
defamatory statements in the article above.

1505. As a result of the Defendant's negligence, the Plaintiff has been severely injured.

1506. Dimitri Patterson has suffered severe injuries in the form of internal and emotional
distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external
reputation, and devastating damage to his family, personal, community, civic, and business
relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct
and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri
Patterson, and he is entitled to damages and injunctive relief.

## COUNT IV
## (General Defamation)
## The Miami Herald

1507. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 43-58, and 221-
259, inclusive, as it is fully stated herein.

1508. The Defendant wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation.

1509. Defendant's defamatory statements were not privileged.

1510. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1511. Here, the evidence proves the Defendant's Articles are based wholly on unverified
anonymous sources.

1512. The Defendant cannot and will not prove they reported on an official judicial proceeding.

1513. This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

1514. The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

1515. With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

1516. The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

1517.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT V
### (Defamation Per Se)
### The Miami Herald

1518.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 43-58, and 221-

188

259 inclusive, as it is fully stated herein.

1519.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be

published the statements set forth above. The defamatory statements prove to be defamation

*per se.*

1520.    The Defendant's defamatory statements were not privileged.

1521.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

1522.    The Defendant imputed multiple felonies to the Plaintiff.

1523.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business

relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct

and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri

Patterson in paragraphs 37-41, 43-58, and 221-259 as a result he is entitled to damages and

injunctive relief.

1524.    A statement is defamatory per se, recognized and deeply rooted in Florida law,

when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

**COUNT VI**
**(Defamation by Implication)**
**The Miami Herald**

189

1525.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 43-58, and 221-259, inclusive, as it is fully stated herein.

1526.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

1527.    The Defendant's defamatory statements were not privileged.

1528.    Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

1529.    The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

1530.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

1531.    A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

The false impression of the Plaintiff given in paragraphs 37-41, 43-58, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## Relief

**WHEREFORE,** Plaintiff respectfully demands judgment against the Defendants as follows:

A.  A judgment for actual damages in the amount of Three Hundred Million ($300,000,000.00) dollars.

B.  Presumed Damages in an amount to be determined by the court, but in no circumstances less than sixty million ($60,000,000.00) dollars.

C.  Punitive Damages against the Defendant in the amount of sixty million (60,000,000.00) dollars or at least 10% of the Defendant's net worth, whichever is greater, to punish and impress upon Defendant the seriousness of their conduct and to deter similar conduct in the future.

D.  Preliminary and Permanent Injunctive Relief ordering the removal of defamatory and infringing Articles and videos by all Defendants listed in this Complaint for eternity from the Internet.

E.  A full and fair correction, apology, or retraction was, in the case of a newspaper or periodical, published in the same editions, or, corresponding issues of the newspaper, or, periodical in which said article appeared, and in a conspicuous place and typed as said original article.

F.  For such other and further relief for the Plaintiff, as the Court deems just and equitable.

Dimitri Patterson
16877 East Colonial Drive
Unit 403
Orlando, FL 32820
prolificdezigns@gmail.com
407-777-2269

191

## **Verification**

Pursuant to 28 U.S.C. § 1746 I, Dimitri Patterson, declare as follows:

1. I am a Plaintiff in the following case and a citizen in the United States of America and a
   resident of Florida.

2. I have personal knowledge of the factual statements set forth in the foregoing *Verified
   Complaint for Damages,* and if called on to testify I would competently testify as to the
   matters stated herein.

3. I verify under penalty and perjury under the laws of the United States of America that the
   factual statements in this *Verified Complaint* concerning myself and the actions of all
   Defendants are correct.

Executed on October 24, 2019

Dimitri Patterson

192

## MEMORANDUM OF LAW

Defamation is defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. *Wolfson v. Kirk, 273 So. 2d 774 (Fla. 4th DCA 1973).* To establish a cause of action for defamation, a plaintiff must show; (1) That the defendant published a false statement about the plaintiff; (2) To a third party; and (3) That the falsity of the statement caused injury to the Plaintiff. *See Razner v. Wellington Regional Med. Ctr.* Defamation. *Id.* Also, statements of pure opinion are not actionable. *Florida Med. Ctr. Inc. v. New York Post Co., Inc.,* 568 So. 2d 454 (Fla. 4th DCA 1990).

There are four categories of statements that constitute libel per se:

1. **Imputing to another a criminal offense amounting to a felony.**

2. Imputing to another a presently existing venereal disease or other loathsome and communicable disease;

3. Imputing to another, the other being a woman, acts of unchastity;

4. Imputing to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office.

   *See Wolfson, 273 So. 2d at 777 (internal citations omitted)*.

## FILING OF FORMAL CHARGES

The State Attorney took no action on Cases #F-15-15779 (where there was never an official arraignment), B-15-034548, and F-17-016392, in addition, the Statute of Limitations expired. Florida Jurisprudence 2d 1151 states that: The State may file a charging document at any time within the applicable speedy trial period (60 days). Taking no action after the defendant is arrested and waiting until after the speedy trial period has expired to file formal charges results in

the State abandoning the prosecution and the recapture provisions of the rule do not apply, with the result that the defendant must be discharged (FL Jur. 2d 1151)

Florida Statute 27.181 (1) states: No such appointee shall perform any of the duties of an Assistant State Attorney until he or she have taken and subscribed to a written oath that he or she will faithfully perform the duties of Assistant State Attorney and shall have caused the oath to be recorded in the Office of the Clerk of the Circuit Court of the county in which the appointing State Attorney resides. Upon the recordation of such appointment and oath, the appointing State Attorney shall promptly cause certified copies thereof to be transmitted to the Secretary of State.

Florida Statute 27.181 (2) states: No such assistant State Attorney may sign Filings of Information unless specifically designated to do so by the State Attorney.

A Filing of Information must be signed by the **designated** assistant State Attorney and the failure of an Assistant State Attorney to sign a Filing of Information, **voids** the charging document (Florida Jur. 2d 1163, 1164 & 1165) . When you carefully examine the charging document that Judge William Altfield is acknowledging, which is not filed according to Rule 2.520 Florida Rules of Judicial Administration (a)(b)(c) and stamped and dated for October 20, 2017, you will clearly see that the designated State Attorney, Katherine Martinez, did not sign the Filing of Information, but instead, State Attorney Kyle Dull's signature is present, which **voids** the charging document for case B-15-34548. Same rule applies for case

F-17-16392 where Assistant state attorney Wayne Adams is the designated prosecuting attorney but does not sign charging document.

**FLORIDA RULES OF CRIMINAL PROCEDURE**

**Rule 3.121 F.R.C.P. Arrest Warrant**

(a) Issuance. An arrest warrant, when issued, shall:

1) be in writing and in the name of the State of Florida;

(2) set forth substantially the nature of the offense;

(3) command that the person against whom the complaint was

made be arrested and brought before a judge;

(4) specify the name of the person to be arrested or, if the name is unknown to the judge,

designate the person by any name or description by which the person can be identified with

reasonable certainty, and include a photograph if reasonably available;

(5) state the date when issued and the county where issued;

(6) be signed by the judge with the title of the office; or, may be

electronically signed by the judge if the arrest warrant bears the affiant's signature, or electronic

signature, is supported by an oath or affirmation administered by the judge, or other person

authorized by law to administer oaths, and, if submitted electronically, is submitted by reliable

electronic means; and

(7) for offenses where a right to bail exists, set the amount of bail or other conditions of release,

and the return date.

**RULE 3.131 F.R.C.P. ALIAS CAPIAS**

**Issuance of Capias; Bail Specified**

On the filing of either an indictment or information charging the commission of a crime, if the

person named therein is not in custody or at large on bail for the offense charged, the judge shall

issue or shall direct the clerk to issue, either immediately or when so directed by the prosecuting

attorney, a capias for the arrest of the person. If the person named in the indictment or

information is a child and the child has been served with a promise to appear under the Florida

Rules of Juvenile Procedure, capias need not be issued. **Upon the filing of the indictment or**

**information, the judge shall endorse the amount of bail,** if any, and may authorize the setting or modification of bail by the judge presiding over the defendant's first appearance hearing. **This endorsement shall be made on the capias and signed by the judge.**

## The Uniform Criminal Extradition Act

Congress implemented this provision through 18 U.S.C. Sec. 3182 (1985), which provides for interstate cooperation in the apprehension and delivery of fugitives on demand from the executive authority of the requesting state, district, or territory from which the person fled. Every state in the United States has adopted provisions of the Uniform Criminal Extradition Act (UCEA).

The UCEA provides for a more uniform process for one state to demand the surrender of a person in another state who is accused of a crime. Each state has slightly different requirements under the UCEA, however, the extradition act generally provides the following requirements:

1  The demanding state must issue a valid arrest warrant;

2  The Governor or other executive authority of the demanding state must make a written request;

3  The person awaiting extradition is entitled to a hearing and representation by an attorney;

4  Extradition may be waived by the person accused;

5  If extradition is not waived, then the court must make certain findings on the request for extradition to ensure compliance with all legal requirements;

6  The demanding state must take custody and transport the person accused within 30 days.

## Malicious Prosecution

The cause of action for malicious prosecution has also long been recognized in the State of Florida. See Tatum Bros. Real Estate & Inv. Co. v. Watson, 109 So. 623, 626 (Fla. 1926). To

prevail in a malicious prosecution action, the Supreme Court has explained that a plaintiff must establish the following elements:

an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

## ABUSE OF PROCESS

The elements of a cause of action for abuse of process under Florida law are: (1) an illegal, improper, or perverted use of process by the defendant; (2) an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) damages to the plaintiff as a result. Valdes v. GAB Robins N. Am. Inc., 924 So.2d 862 (Fla. 3d DCA 2006)

## FLORIDA RULES OF JUDICIAL ADMINISTRATION

### Rule 2.520. Documents

**(a) Electronic Filing Mandatory.** All documents filed in any court shall be filed by electronic transmission in accordance with rule 2.525. "Documents" means pleadings, motions, petitions, memoranda, briefs, notices, exhibits, declarations, affidavits, orders, judgments, decrees, writs, opinions, and any paper or writing submitted to a court.

**(b) Type and Size.** Documents subject to the exceptions set forth in rule 2.525(d) shall be legibly typewritten or printed, on only one side of letter sized (8 1/2 by 11 inch) white recycled paper with one inch margins and consecutively numbered pages. For purposes of this rule, paper

is recycled if it contains a minimum content of 50 percent waste paper. Reduction of legal-size (8 1/2 by 14 inches) documents to letter size (8 1/2 by 11 inches) is prohibited. All documents filed by electronic transmission shall comply with rule 2.526 and be filed in a format capable of being electronically searched and printed in a format consistent with the provisions of this rule.

**(c) Exhibits.** Any exhibit or attachment to any document may be filed in its original size.

**(d) Recording Space and Space for Date and Time Stamps.**

(1) On all documents prepared and filed by the court or by any party to a proceeding which are to be recorded in the public records of any county, including but not limited to final money judgments and notices of lis pendens, a 3- inch by 3-inch space at the top right-hand corner on the first page and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page shall be left blank and reserved for use by the clerk of court.

(2) On all documents filed with the court, a 1-inch margin on all sides must be left blank for date and time stamps.

**(A) Format.** Date and time stamp formats must include a single line detailing the name of the court or Portal and shall not include clerk seals. Date stamps must be 8 numerical digits separated by slashes with 2 digits for the month, 2 digits for the date, and 4 digits for the year. Time stamps must be formatted in 12 hour time frames with a.m. or p.m. included. The font size and type must meet the Americans with Disabilities Act requirements.

**(B) Location.** The Portal stamp shall be on the top left of the document. The Florida Supreme Court and district courts of appeal stamps shall be on the left margin horizontally. Any administrative agency stamp shall be on the right margin horizontally. The clerk's stamp for circuit and county courts shall be on the bottom of the document.

**(C) Paper Filings.** When a document is filed in paper as authorized by rule, the clerk may stamp the paper document in ink with the date and time of filing instead of, or in addition to, placing the electronic stamp as described in subdivision (B). The ink stamp on a paper document must be legible on the electronic version of the document, and must neither obscure the content or other date stamp, not occupy space otherwise reserved by subdivision (B).

**(e) Exceptions to Recording Space.** Any documents created by persons or entities over which the filing party has no control, including but not limited to wills, codicils, trusts, or other testamentary documents; documents prepared or executed by any public officer; documents prepared, executed, acknowledged, or proved outside of the State of Florida; or documents created by State or Federal government agencies, may be filed without the space required by this rule.

**(f) Noncompliance.** No clerk of court shall refuse to file any document because of noncompliance with this rule. However, upon request of the clerk of court, noncomplying documents shall be resubmitted in accordance with this rule.

### FLORIDA STATUTE 28.222

### 28.222 Clerk To Be County Recorder

(1)   The clerk of the circuit court shall be the recorder of all instruments that he or she may be required or authorized by law to record in the county where he or she is clerk.

(2)   The clerk of the circuit court shall record all instruments in one general series called "Official Records." He or she shall keep a register in which he or she shall enter at the time of filing the filing number of each instrument filed for record, the date and hour of filing, the kind of instrument, and the names of the parties to the instrument. The clerk shall maintain a general

alphabetical index, direct and inverse, of all instruments filed for record. The register of Official Records must be available at each office where official records may be filed.

### ACTS SUBJECTING PERSON TO JURISDICTION OF COURTS OF STATE.

Florida Statute 48.193

(1)(a)   A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1.     **Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.**

2.     **Committing a tortious act within this state.**

3.     **Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.**

4.     Contracting to insure a person, property, or risk located within this state at the time of contracting.

5.     With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

6.     **Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury,** either:

a.        **The defendant was engaged in solicitation or service activities within this state**; or

b.        **Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.**

7.        Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

8.        With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.

9.        Entering into a contract that complies with s. 685.102.

(b)        Notwithstanding any other provision of this subsection, an order issued, or a penalty or fine imposed, by an agency of another state is not enforceable against any person or entity incorporated or having its principal place of business in this state if the other state does not provide a mandatory right of review of the agency decision in a state court of competent jurisdiction.